Ira ROSENFELD, Yoram Leidner, a/k/a Jerry Leidner, Shirley Rosenfeld, Jack Stromfeld, and Andrew Chamow and Robert Chamow d/b/a Garfield Sales Company, Plaintiffs,

v.

Steven Yueh Houg LU, Phillip Lu, James Lu and Carryland Company, Defendants.

No. 89–0120–CIV.

United States District Court, S.D. Florida.

June 6, 1991.

1132

Stephen J. Goldstein of Adorno & Zeder, Miami, Fla., for plaintiffs.

Kevin J. Murray of Kenny, Nachwalter Seymour & Arnold, Miami, Fla., for defendants.

## MEMORANDUM ORDER

RYSKAMP, District Judge.

THIS CAUSE is before the court on Defendants' Motion to Dismiss Plaintiffs'

Claims under Florida Statute § 686.201 on the grounds that the statute is unconstitutional under both the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3, and the Privileges and Immunities Clause, U.S. Const. art. IV, § 2, of the United States Constitution. After careful consideration of the record and having held a hearing on this matter, the court now issues the following order.

## I. BACKGROUND

This matter arises out of a dispute between Florida sales representatives and Carryland, an out-of-state corporation, regarding the payment of sales commissions. Carryland is a general partnership whose principal place of business is in Los Angeles County, California. The company does not have a fixed or permanent place of business in the state of Florida. The Lu Brothers, who have been named as individual defendants in this lawsuit, are partners in Carryland. Carryland is engaged in the business of importing ladies' handbags and selling them to retailers throughout the United States. The corporation's principal means of selling is through sales representatives located in various regions of the country.

There are five plaintiffs in this action.[1] Four of the plaintiffs worked under plaintiff Ira Rosenfeld as members of his selling group, and they are identified in the Amended Complaint as sub-representatives of Rosenfeld. As a Florida sales representative for Carryland from mid–1985 to October 1988, Rosenfeld was paid on a commission basis. He did not have a written contract with Carryland. Following his termination, Rosenfeld and his sub-representatives allegedly failed to receive the commissions they had earned, and consequently this action was instituted.

## II. FLORIDA STATUTE § 686.201

In Count I of their Amended Complaint, plaintiffs seek damages against defendants under Florida Statute § 686.201. In es-

sence, the statute provides that upon the termination of a sales representative who does not have a written contract with his or her principal, the sales representative is entitled to be paid commissions due at the time of termination within thirty days of that termination. Fla.Stat. § 686.201 (1987). If the commissions are not paid within thirty days of termination, the sales representative has a cause of action for double the amount found to be due. Fla. Stat. § 686.201(3)(b). Florida Statute § 686.201(1)(b) defines a principal as follows:

"Principal" means a person *who does not have a permanent or fixed place of business in this state* and who

1. Manufactures, produces, imports, or distributes a product for wholesale, except for fresh commodities;

2. Contracts with a sales representative to solicit orders for the product; and

3. Compensates the sales representative, in whole or in part, by commission.

(Emphasis added).

Arguing that the statute, on its face, affirmatively discriminates against out-of-state manufacturers and importers, defendants claim that Florida Statute § 686.201 violates the Commerce Clause. Defendants further contend that the statute offends the Privileges and Immunities Clause on the basis that non-residents do not have the privilege of engaging in business activities on substantially equal terms with residents, and there is no legitimate reason for the disparity in treatment between Florida residents and out-of-state persons.

Pursuant to 28 U.S.C.A. § 2403(b) (West 1978), this court certified to the Attorney General of the State of Florida that the constitutionality of § 686.201 of the Florida Statutes has been drawn into question. Attorney General Robert A. Butterworth filed a notice of acknowledgement with the court on August 20, 1990. The notice of acknowledgment states that the Attorney

---

1. The five plaintiffs are Ira Rosenfeld, his wife, Shirley Rosenfeld, Jerry Leidner, Jack Strom- feld and Robert Chamow.

General does not wish to appear as a party in defense of the statute but reserves the right to be heard in the future and to take an appeal if necessary.

### III. THE COMMERCE CLAUSE

The court will begin its analysis with a review of the general principles of dormant Commerce Clause jurisprudence. The Commerce Clause of the United States Constitution provides that "[t]he Congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. art I, § 8, cl. 3. Although the Commerce Clause only refers to Congress' power over commerce, "the Court long has recognized that it also limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702, 711 (1980). The Supreme Court has noted that the Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302, 308 (1988). In its most recent Commerce Clause decision, the Supreme Court stated that the Commerce Clause is regarded as " 'a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.' " *Dennis v. Higgins*, ⸺ U.S. ⸺, 111 S.Ct. 865, 870, 112 L.Ed.2d 969, 9.8 (1991) (citing *South–Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 87, 104 S.Ct. 2237, 2240, 81 L.Ed.2d 71, 76 (1984).

The limitation on state regulatory power imposed by the Commerce Clause is, however, not absolute. As the court in *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702, explained: "... the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Id.*, 447 U.S. at 36, 100 S.Ct. at 2015, 64 L.Ed.2d at 711.

To determine whether a state statute violates the Commerce Clause, the Supreme Court has adopted a two-tiered approach. In *Brown–Forman Distillers v. N.Y. State Liquor Authority*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), the Supreme Court stated:

When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. *See* e.g. *Philadelphia v. New Jersey*, 437 U.S. 617, 57 L.Ed.2d 475, 98 S.Ct. 2531 (1978). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L.Ed.2d 174, 90 S.Ct. 844 [847] (1970).

*Brown–Forman*, 476 U.S at 579, 106 S.Ct. at 2084, 90 L.Ed.2d at 559–60 (citations omitted).

 A state statute which affirmatively discriminates, either on its face or in its practical effect, against transactions in interstate commerce is subject to heightened scrutiny. *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110, 121 (1986). *See Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250, 262 (1979) ("[F]acial discrimination by itself may be a fatal defect" and "[a]t a minimum ... invokes the strictest scrutiny ..."). Under the strict scrutiny test, the statute will be upheld only if it " 'serves a legitimate local purpose' " and "this purpose could not be served as well by available nondiscriminatory means." *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d. 110, 121 (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250, 262). While the party challenging the validity of a state statute generally bears the burden of demonstrating discrimination, where a statute discriminates against interstate commerce on its face, the burden shifts to the state to justify the validity of the statute. *Maine v. Taylor*, 477 U.S.

131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110, 121; *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250, 262.

Alternatively, a narrowly drawn state statute that is neutral in its effect upon local and interstate commerce and advances a legitimate state interest is valid if it survives scrutiny under the *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), balancing test. If the state statute regulates evenhandedly but incidentally burdens interstate commerce, the statute will be upheld unless the burden it imposes on interstate commerce is " 'clearly excessive in relation to the putative local benefits.' " *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110, 120 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178).

Relying on *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110, defendants contend that the Florida statute at issue is subject to heightened scrutiny because it affirmatively discriminates against interstate commerce. Plaintiffs, however, argue that the court must consider the overall effect of the statute on interstate commerce, and weigh the burden imposed on interstate commerce in relation to the putative local benefits. Plaintiffs cite *Brown–Forman Distillers v. N.Y. State Liquor Authority,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552, and the Eleventh Circuit decision, *Continental Illinois Corp. v. Lewis,* 827 F.2d 1517 (11th Cir. 1987), *vacated as moot, Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990),[2] in support of their contention.

In *Brown–Forman,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552, the court commented on its two-tiered approach in analyzing state economic regulation under the Commerce Clause:

We have also recognized that there is no clear line separating the category of state regulation that is virtually per se invalid under the Commerce Clause, and the category subject to the *Pike v. Bruce Church* balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity.

*Brown–Forman,* 476 U.S. at 579, 106 S.Ct. at 2084, 90 L.Ed.2d at 560.[3] Consistent with this approach, the Eleventh Circuit reasoned that "[t]he analysis necessary for a determination of whether a facially neutral state statute is unconstitutional under the Commerce Clause involves the same central inquiry as when the evaluation is applied to a facially discriminatory state statute. The primary focus in both instances is whether the 'practical operation' or the 'probable effect' of the challenged statute is discriminatory." *Continental Illinois Corp. v. Lewis,* 827 F.2d 1517, 1520 (11th Cir.1987).

■ While the court finds that the statute is invalid under the strict scrutiny test articulated in *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110, the court will nevertheless consider the overall effect of the statute and will also demonstrate that the statute cannot survive scrutiny under the less rigorous *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174, balancing approach.

## IV. FACIALLY DISCRIMINATORY

■ On its face, Florida Statute § 686.201 discriminates against interstate commerce. The statute imposes requirements on out-of-state principals that are not applicable to in-state businesses. According to the express language of the statute, the provisions only apply to a manufacturer or importer who does not have a permanent place of business in Florida. Fla.Stat. § 686.201(1)(b). The statute has absolutely no effect on transactions where

2. In *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400, the Supreme Court determined that the case had been rendered moot by 1987 amendments to the Bank Holding Company Act of 1956.

3. *See also, Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 37, 100 S.Ct. 2009, 2016, 64 L.Ed.2d 702, 712 (1980) (principal focus of inquiry must be practical operation of statute).

the principal has a place of business within the state.

Specifically, the statute mandates that an out-of-state manufacturer conducting business with a Florida sales representative enter into a written contract. If the out-of-state principal fails to meet this requirement and does not pay commissions within thirty days of the sales representative's termination, the company is subject to double damages.[4]

## V. OVERALL EFFECT IS DISCRIMINATORY

Plaintiffs urge the court to consider the overall effect the statute has on interstate commerce. Claiming that the statute imposes no barrier, burden, restriction or prohibition on any out-of-state company conducting business in Florida, plaintiffs contend that both in-state and out-of-state companies equally enjoy full and open access to the Florida market.

Plaintiffs' argument that Florida Statute § 686.201 imposes no added cost on an out-of-state principal engaging in interstate commerce lacks merit. To comply with the statute, an out-of-state company must enter into a written contract with every Florida sales representative it employs. Defendants maintain that the out-of-state corporation will need to retain an attorney to draft the contract and insure compliance. Contrary to plaintiffs' assertion that the statute does not burden out-of-state businesses, foreign entities must incur additional expenses in order to meet the statutory requirements. Florida manufacturers and importers, however, are wholly exempt from the reaches of the statute.

The Supreme Court addressed the issue of additional costs of doing business for out-of-state merchants over 50 years ago in *Best & Co. v. Maxwell*, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275 (1940). The court examined a North Carolina statute that levied a $250 tax on anyone who was not a regular retail merchant in North Carolina and who displayed samples in a hotel room within the state for the purpose of securing retail sales orders. *Id.*, 311 U.S. at 455, 61 S.Ct. at 334–35, 85 L.Ed. at 277. Holding that the statute was unconstitutional under the Commerce Clause, the court found that the additional $250 investment, which was required of out-of-state retailers but not of their local competitors, operated to hinder interstate commerce. *Id.*, 311 U.S. at 456–57, 61 S.Ct. at 335, 85 L.Ed. at 278.

Under the Florida statute in question, a foreign corporation that fails to comply with the regulation will be subject to a penalty. The Third Circuit addressed the constitutionality of discriminatory penalties in *Old Coach Development Corp., Inc. v. Tanzman*, 881 F.2d 1227 (3rd Cir.1989). In *Old Coach*, 881 F.2d 1227, the State of New Jersey established a discriminatory regulatory scheme, whereby sellers of out-of-state land were subjected to requirements that were not imposed on sellers of New Jersey land. *Id.* at 1232. Under this regulatory scheme, developers who sold out-of-state subdivided land to New Jersey residents were governed by the Land Sales Full Disclosure Act ("LSFDA") while developers who sold subdivided land within New Jersey were subject to the Planned Real Estate Development Full Disclosure Act ("PREDA"). Although the two statutes contained substantial structural similarities, the court enumerated eight differences between the two regulatory schemes. *Id.* at 1229–30. The Third Circuit found

---

**4.** Sections (2) and (3) of Florida Statute 686.201 provide:

(2) When a principal contracts with a sales representative to solicit wholesale orders within this state, the contract shall be in writing and shall set forth the method by which the commission is to be computed and paid. The principal shall provide the sales representative with a signed copy of the contract and shall obtain a signed receipt for the contract from the sales representative.

(3)(a) When the contract between a sales representative and a principal is terminated and the contract was not reduced to writing, all commissions due shall be paid within 30 days of termination.

(b) In the event a principal fails to comply with the provisions of paragraph (a) the sales representative has a cause of action for damages equal to double the amount of commission found to be due. The prevailing party in any such action is entitled to an award of reasonable attorney's fees and court costs.

that one of the most significant differences was the provisions relating to penalties for a violation of the Act. The LSFDA, applying to developers who sold out-of-state land, provided for a possible term of imprisonment for up to one year while the PREDA, applying to developers who sold land within the state, only imposed monetary liability for violations. Concluding that New Jersey's regulatory scheme discriminated on its face against interstate commerce in that it treated sellers of out-of-state land less favorably than sellers of New Jersey land, *id.* at 1232, the court held that the Act was invalid under the Commerce Clause. *Id.* at 1234.

■ Plaintiffs' contention that the Florida statute does not offend the Commerce Clause because it does not block or prohibit out-of-state companies from conducting business within the state of Florida is misguided. The Third Circuit explicitly rejected this argument in *Old Coach*, 881 F.2d 1227. In striking down the statute, the court stated: "Although New Jersey's regulatory scheme does not block the flow of commerce at the state's borders, it imposes requirements and costs on sellers of out-of-state land which are not imposed on sellers of New Jersey land." *Id.* at 1232.

Plaintiffs further maintain that the overall effect of the statute is not discriminatory because the practical scope is extremely limited. The penalty, if any, is imposed only if there is no written contract, there is a termination and if, within thirty days of the termination of the sales representative, the out-of-state-manufacturer or importer has failed to pay the commissions earned by the sales representative.

■ Plaintiffs' assertion that the statute is constitutional because any discriminatory effect of the statute is minimal lacks support in Supreme Court doctrine. In *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988), the court responded to such an argument by stating, "[o]ur cases, however, indicate that where discrimination is patent, as it is here, neither a widespread advantage to in-state interests nor a widespread disadvantage to out-of-state competitors need be shown." *Id.*, 486 U.S. at 276, 108 S.Ct. at 1809, 100 L.Ed.2d at 310. Thus the scope of the discriminatory effect is not the dispositive issue.

■ Finally, plaintiffs argue that the statute is constitutional because the penalty could be avoided entirely if defendants simply comply with the statutory provision requiring a written contract. Plaintiffs cite no Supreme Court authority for the proposition that if defendants merely comply with the discriminatory regulation, defendants would not be subject to the penalty, and the overall effect of the statute would not be discriminatory. The court finds that the Supreme Court has not recognized such an exception, and plaintiffs' argument has no basis in Commerce Clause jurisprudence.

Indeed, the Supreme Court has struck down a number of statutes that imposed discriminatory regulations on interstate commerce. *See e.g., Healy v. The Beer Institute, Inc.*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989) (Connecticut statute requiring out-of-state shippers of beer to affirm that their posted prices for products sold to Connecticut wholesalers are no higher than prices at which those products are sold in bordering states); *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988) (Ohio law awarding tax credit for each gallon of ethanol sold by fuel dealers if ethanol produced in Ohio or in state with similar tax advantage); *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988) (Ohio statute permanently tolling limitations period as to foreign corporations that are not present in state and have not designated agent for service of process); *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980) (Florida statute prohibiting out-of-state banks, trust companies, and bank holding companies from owning business within state that sells investment advisory services); *Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) (Oklahoma law prohibiting out-of-state shipment of minnows from Oklahoma waters).

The Supreme Court's analysis in *Healy v. The Beer Institute, Inc.*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989), can be applied to the instant case. In *Healy*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275, the court struck down a Connecticut statute requiring that interstate brewers or shippers of beer affirm that their posted prices for beer sold to Connecticut wholesalers were no higher than the prices being charged in the border states as of the time of the affirmation. *Id.*, 491 U.S. at 340–41, 109 S.Ct. at 2501–02, 105 L.Ed.2d at 291. The court noted that the statute facially discriminated against brewers and shippers of beer engaged in interstate commerce. A Connecticut manufacturer or brewer who did not engage in interstate commerce was exempt from the regulatory scheme and was free to charge wholesalers whatever price it wished. *Id.*, 491 U.S. at 341, 109 S.Ct. at 2501, 105 L.Ed.2d at 291. The court reasoned that this discriminatory treatment effectively resulted in "penalizing" Connecticut brewers who sought border-state markets and out-of-state shippers who chose to sell both in Connecticut and one or more border states. *Id.*, 491 U.S. at 341, 109 S.Ct. at 2501–502, 105 L.Ed.2d at 291. Observing that the purpose of the price-affirmation law was to ensure the lowest possible prices for Connecticut consumers, the court stated: "While this may be a legitimate justification for the statute, it is not advanced by, in effect, exempting brewers and shippers engaging in solely domestic sales from the price regulations imposed on brewers and shippers who engage in sales throughout the region." *Id.*, 491 U.S. at 341, 109 S.Ct. at 2502, 105 L.Ed.2d at 291. The Court thus concluded that the imposition of discriminatory regulations, which penalized those engaged in interstate commerce, was violative of the Commerce Clause.

Likewise, in *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), the Supreme Court struck down protectionist legislation that unduly burdened interstate commerce. In that case, the court considered the question of whether an Ohio statute, which permanently suspended the statute of limitations protection for foreign corporations, offended the Commerce Clause. Pursuant to the Ohio law, the statute of limitations was tolled for any period in which a person or corporation was not "present" in the state and had not designated an agent for service of process. *Id.*, 486 U.S. at 889, 108 S.Ct. at 2219, 100 L.Ed.2d at 901. The statute affirmatively discriminated against out-of-state companies. As in the instant case, the statute did not directly block or prohibit the flow of commerce. It applied only in the context of alleged wrongful conduct. Holding that the Ohio statute violated the Commerce Clause because it imposed an impermissible burden on interstate commerce, the court reasoned: "Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it is conceded by all parties that the Ohio long arm statute would have permitted service on Midwesco throughout the period of limitations." *Id.*, 486 U.S. at 894, 108 S.Ct. at 2222, 100 L.Ed.2d at 904. The court found no justification for subjecting the activities of foreign and domestic corporations to inconsistent regulations. *Id.*, 486 U.S. at 894, 108 S.Ct. at 2222, 100 L.Ed.2d at 904.

Plaintiffs rely on *Silver v. Woolf*, 694 F.2d 8 (2nd Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983), and *Aldens, Inc. v. Miller*, 610 F.2d 538 (8th Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), in support of their contention that the courts have upheld state statutes which may or do burden out-of-state businesses. Both of these cases are easily distinguishable from the instant case.

In *Silver v. Woolf*, 694 F.2d 8, the court assessed the constitutionality of a Connecticut statute which required any person acting as a consumer collection agency within the state to obtain a license from the banking commissioner. Unlike Florida Statute § 686.201, the statute was facially neutral in that it applied equally to both in-state and out-of-state consumer collection agen-

cies conducting business in Connecticut.[5] Determining that the state had a legitimate interest in regulating debt collection practices, *id.* at 12, the court ruled that requiring out-of-state companies to obtain the same license as in-state companies was not such an excessive burden on interstate commerce that it was prohibited by the Commerce Clause. *Id.* at 13–14.

Likewise, plaintiffs' reliance on *Aldens, Inc. v. Miller,* 610 F.2d 538, is misplaced. In *Aldens,* 610 F.2d 538, an interstate mail order merchandiser challenged the constitutionality of provisions of the Iowa Consumer Credit Code. The plaintiff, an Illinois corporation, operated a mail order business in all fifty states and contended that Iowa's limitation on credit charges that may be imposed upon Iowa residents constituted an excessive burden on interstate commerce. *Id.* at 538–39. The statute was neutral on its face; it established a maximum finance charge that could be imposed on Iowa residents irrespective of whether the company imposing the finance charge was an Iowa company or a foreign business. The court identified the interest of the State of Iowa in protecting its citizens from usurious interest rates in consumer credit transactions. *Id.* at 539. Finding that this interest of the state was sufficient to overcome the burdens placed on interstate sellers to conform to the provisions of the Iowa Consumer Credit Code, the court upheld the statute. *Id.* at 540.

In both of the cases relied upon by plaintiffs, the courts considered statutes that were facially neutral and regulated evenhandedly. The statutes were challenged by companies who did business in a number of states and who argued that they were unduly burdened by having to comply with different regulations in different states. Clearly, *Silver v. Woolf,* 694 F.2d 8, and *Aldens, Inc. v. Miller,* 610 F.2d 538, have no application to a statute that regulates

out-of-state enterprises and exempts instate firms entirely from its penalizing effects.

The court finds that Florida Statute § 686.201 discriminates on its face against interstate commerce. Upon careful consideration of the statute, Supreme Court doctrine, as well as several Circuit opinions, the court further determines that the practical or probable effect of the statute is discriminatory.

## VI. LEGITIMATE LOCAL PURPOSE

█ Although the statute discriminates on its face and in its practical effect against interstate commerce, it may be upheld if it advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives. *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110, 121. Plaintiffs assert that Florida Statute § 686.201 was enacted to serve the interests of the state in ensuring that individuals who work within its borders are paid all money that is earned by them. Upon termination of the employment relationship, sales representatives apparently encountered difficulties in recovering the commissions they had earned from out-of-state companies. According to Exhibit A of Plaintiffs' Response to Defendants' Motion to Dismiss, the out-of-state principals were aware of the fact that the expense of litigation would deter sales representatives from filing a law suit. As a result, out-of-state corporations would allegedly withhold commissions, thereby forcing sales representatives to negotiate a distress settlement. Based on Plaintiffs' Exhibit A, it appears that the purpose of the double damages provision of the bill was to neutralize the alleged unfair advantage of the principal and place the principal and sales representative on a parity for settlement.

---

**5.** Conn.Gen.Stat.Ann. § 42–127a(a) (West 1990) reads in relevant part:

A consumer collection agency is acting within this state if it (1) has its place of business located within this state; (2) has its place of business located outside this state and collects from consumer debtors who reside within this state for creditors whose place of business is located within this state; or (3) has its place of business located outside this state and regularly collects from consumer debtors who reside within this state for creditors whose place of business is located outside this state.

■ Plaintiffs claim that the difficulties experienced by sales representatives in recovering commissions from out-of-state manufacturers and importers are unique to foreign businesses. Maintaining that it is more burdensome for sales representatives to collect commissions from foreign corporations than in-state businesses, plaintiffs raise three points. The court will address each of plaintiffs' arguments.

■ First, plaintiffs assert that sales representatives incur substantially greater expenses in litigating a claim against an out-of-state company than an in-state firm. The court finds this argument unpersuasive. Pursuant to the Florida long arm statute, plaintiffs can sue an out-of-state principal in the state of Florida; the foreign manufacturer or importer can be hailed into Florida courts. Although the Supreme Court has recognized that it may be more difficult to serve an out-of-state corporation than an in-state company, this fact does not justify imposing burdens on foreign enterprises, while exempting local businesses from the statutory provisions. *See Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 893, 108 S.Ct. 2218, 2222, 100 L.Ed.2d 896, 904 (1988). Furthermore, the court fails to see how the cost of litigating a claim against an out-of-state company in a Florida court would be materially greater than the cost of litigating a similar claim against an in-state business in a Florida court.

Second, plaintiffs' contention that proceedings against an out-of-state manufacturer or importer are likely to be lengthier or more time-consuming than a comparable suit against a Florida corporation is similarly unconvincing. In-state manufacturers and importers as well as out-of-state companies can engage in delay tactics. Moreover, there are other statutory provisions which address such problems as delay or the assertion of frivolous defenses, and sanctions can be imposed against the offending party.

Finally, plaintiffs argue that the most significant problem encountered by sales representatives involves the execution of the judgment. According to plaintiffs, it is considerably more difficult to execute a judgment against an out-of-state entity than an in-state company. Asserting that sales representatives have access to the property of in-state principals and can easily collect the judgment, plaintiffs contend that a Florida judgment would be "unenforceable" and "uncollectible" as to the property of an out-of-state principal. In essence, plaintiffs maintain that Florida Statute § 686.201 advances a legitimate local purpose by ensuring that Florida sales representatives receive their commissions, and that the penalty provision thus constitutes additional compensation to the wronged sales representative for his additional expenses in collecting his judgment in a foreign state.

Plaintiffs' argument completely ignores the Full Faith and Credit Clause of the United States Constitution.[6] The Full Faith and Credit Clause "requires that judicial proceedings in each State be given full faith and credit in the courts of every other State." *Davis v. Davis,* 305 U.S. 32, 39, 59 S.Ct. 3, 6, 83 L.Ed. 26, 29 (1938). A judgment rendered in the state of Florida is enforceable in any state. The court finds that any possible difficulty sales representatives may experience in executing a judgment does not justify penalizing all out-of-state manufacturers and importers.

■ The court now considers whether there are alternative means available to promote the local purpose without discriminating against interstate commerce. It appears that the Florida legislature sought to address the inherent problem of the disparity in bargaining power between a sales representative and a manufacturer or importer. While this may be a valid concern, it also applies to manufacturers and importers located within the borders of the state of Florida; the problem of unequal

---

6. The Full Faith and Credit Clause provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. 4, § 1.

bargaining power is not unique to interstate commerce. The court finds that drawing a distinction between companies that have a fixed place of business within the state and those who do not, has no logical basis in furthering the state's goals of protecting its citizens. If the purpose of the statute is to encourage written contracts and to ensure prompt payment of commissions, the state's goals can be achieved in a non-discriminatory manner by applying the statute to all manufacturers and importers.

Plaintiffs urge this court to find § 686.201 constitutional on the grounds that numerous states have enacted similar legislation,[7] and no court has struck down the statute as violative of the Commerce Clause.[8] The fact that other states have comparable statutes does not sway the court one way or the other in its analysis of the constitutionality of the statute. In *Brown–Forman Distillers v. N.Y. State Liquor Authority*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), the Supreme Court noted that "[t]wenty other states have similar affirmation laws," *id.*, 476 U.S. at 576, 106 S.Ct. at 2082, 90 L.Ed.2d at 558, and this observation did not deter the court from declaring the challenged statute unconstitutional under the Commerce Clause.

Since Florida Statute § 686.201 and other similar state statutes discriminate exclusively against interstate commerce and have absolutely no effect on purely local or intrastate transactions, it is not surprising that the various state legislatures were able to enact such a bill. As the Supreme Court noted over fifty years ago, "when the regulation is of such a character that its burden falls principally upon those without the state, legislative action is not likely to be subjected to those political restraints which are normally exerted on legislation where it affects adversely some interest within the state." *South Carolina State Highway Dept. v. Barnwell Brothers, Inc.*, 303 U.S. 177, 185 n. 2, 58 S.Ct. 510, 514 n. 2, 82 L.Ed. 734, 738 n. 2 (1938).[9]

## VII. BALANCING APPROACH

The court now considers whether the statute can survive scrutiny under the more lenient balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). The Supreme Court articulated the general rule as follows:

Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well

---

7. The following state statutes contain analogous provisions:
 Ala.Code §§ 8–24–1 to –5 (Supp.1990).
 Cal.Lab.Code §§ 2751–2752 (West 1989).
 Ga.Code Ann. §§ 10–1–700 to –704 (Harrison Supp.1987).
 Kan.Stat.Ann §§ 44–341 to –347 (Supp.1990).
 Ky.Rev.Stat.Ann. §§ 371.370–.385 (Baldwin 1989).
 La.Rev.Stat.Ann. §§ 51:441–51:445 (West Supp.1991).
 Md.Ann.Code art. 100 §§ 127–131 (Supp. 1990).
 Miss.Code Ann. §§ 75–87–1 to –7 (Supp.1990).
 Ohio Rev.Code Ann. § 1335.11 (Anderson Supp.1990).
 Tenn.Code Ann. § 47–50–114 (1988).
 Tex.Bus. & Com.Code Ann. §§ 35.81–.86 (Vernon 1987).

8. The court is unaware of a single reported decision addressing the issue of whether a similar state statute survives constitutional scrutiny.

9. Laurence Tribe commented on how the Supreme Court regards such state statutes: "Because regulation unduly burdening or discriminating against interstate or out-of-state enterprise [sic] has been thought to result from the inherently limited constituency to which each state or local legislature is accountable, the Supreme Court has viewed with suspicion any state action which imposes special or distinct burdens on out-of-state interests unrepresented in the state's political process." Laurence H. Tribe, American Constitutional Law, at 409–410 (2d ed. 1988).

with a lesser impact on interstate activities.

*Id.*, 397 U.S. at 142, 90 S.Ct. at 847, 25 L.Ed.2d at 178 (citations omitted).

The *Pike* approach assumes that the statute does not discriminate against interstate commerce, and therefore it grants greater deference to the local interests. *Service Machine & Shipbuilding Corp. v. Edwards*, 617 F.2d 70, 75 (5th Cir.1980), *aff'd mem.*, 449 U.S. 913, 101 S.Ct. 310, 66 L.Ed.2d 142 (1980). Although this standard is not warranted since the challenged statute facially discriminates against interstate commerce, the court nevertheless finds that even if it were to apply the less rigorous *Pike* test, the statute could not survive scrutiny. Even if the court were to find that the state's interest is legitimate, the court determines that interstate commerce is subject to substantial restraints and, as stated above, there are less burdensome schemes available to preserve the local interests. The court concludes that in light of the other alternatives open to the state, the statute must be invalidated under the Supreme Court's *Pike* balancing test as well.

## VIII. CONCLUSION

Under the strict scrutiny test, Florida Statute § 686.201 violates the Commerce Clause. The statute facially discriminates against interstate commerce, and it is also discriminatory in its practical or probable effect. Even if the state's interest in ensuring that Florida sales representatives promptly receive their commissions were found to be legitimate, the statute would not survive constitutional scrutiny since there are alternative nondiscriminatory means available to promote the local purpose without discriminating against interstate commerce. The statute could be applicable to all manufacturers and importers, in-state and out-of-state.

Because the statute is unconstitutional under the Commerce Clause, it is unnecessary for the court to consider arguments regarding the constitutionality of the statute under the Privileges and Immunities Clause.

Based on the foregoing analysis, it is hereby:

ORDERED and ADJUDGED that Florida Statute § 686.201 is UNCONSTITUTIONAL under the Commerce Clause of the United States Constitution.

ORDERED and ADJUDGED that Defendants' Motion to Dismiss Plaintiffs' Claims under Florida Statute § 686.201 is GRANTED.

DONE and ORDERED.