**JOHN HAVLIR & ASSOCIATES, INC., Plaintiff,**

v.

**TACOA, INC., Defendant.**

**Civ. A. No. 3:91–CV–1414–D.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 15, 1993.

Anne P. Stark (argued) and William M. Hayner of William M. Hayner & Assocs., Dallas, TX, for plaintiff.

Jonathan C. Wilson (argued) and John R. deSteiguer of Haynes and Boone, L.L.P., Dallas, TX, for defendant.

Allison H. Eccles, Asst. Atty. Gen., Austin, TX, for State of Tex.

FITZWATER, District Judge:

This civil action presents the question whether Tex.Bus. & Com.Code Ann. §§ 35.-82–.84 (West 1987) violate the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3.

I

Plaintiff John Havlir and Associates, Inc. ("Havlir") filed this action against defendant Tacoa, Inc. ("Tacoa") in state court. Tacoa is a manufacturer of jewelry. Havlir was Tacoa's exclusive sales representative for several southwestern states. Tacoa paid Havlir commissions on goods shipped to, or sales made in, Havlir's sales territory. Havlir alleges that Tacoa is liable for breach of contract, and on a theory of quantum meruit, for failing and refusing to account fully for the goods sold, to pay for commissions due and owing, and to pay the amount due on a bonus account. Havlir seeks related relief in the form of an accounting, interest, costs, and attorney's fees. Havlir also brings a claim against Tacoa based on §§ 35.81–.86, contending Tacoa is liable for treble damages, attorney's fees, and costs for failing to pay commissions due Havlir within 30 working days after the date of Havlir's termination.

**754**

Tacoa removed the case to this court based on diversity of citizenship. It now moves to dismiss Havlir's claim based on §§ 35.81–.86, contending the law violates the Commerce Clause of the United States Constitution.[1] The court directed Tacoa to provide notice to the Attorney General of Texas of Tacoa's challenge to the law. *See* 28 U.S.C. § 2403(b). Tacoa did so, and in response the Attorney General filed an answer denying that the statute is unconstitutional. The court convened oral argument on Tacoa's motion to dismiss, but the Attorney General declined to participate, contending the issue has been adequately addressed by the other parties.

## II

Sections 35.81–.86 of the Texas Business and Commerce Code govern aspects of the legal relationship between sales representatives who solicit orders in Texas and manufacturers who do not have a permanent or fixed place of business in Texas. The portion of the statute on which Havlir relies to hold Tacoa liable for treble damages, attorney's fees, and costs is § 35.84. This section provides:

> A principal who fails to comply with a provision of a contract under Section 35.82 relating to payment of a commission or fails to pay a commission as required by Section 35.83 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and costs.

It is undisputed that Havlir is a "sales representative" within the meaning of § 35.84, *see* § 35.81(3), and that Tacoa is a "principal," *see* § 35.81(2). Section 35.81(2) defines "principal" as a person who

(A) does not have a permanent or fixed place of business in this state;

(B) manufactures, produces, imports, or distributes a product for sale to customers who purchase the product for resale;

(C) uses a sales representative to solicit orders for the product; and

(D) compensates the sales representative in whole or in part by commission.

It is § 35.81(2)'s limitation of principals to out-of-state persons that gives rise to Tacoa's challenge to its constitutionality. Tacoa contends the statute violates the Commerce Clause because it discriminates facially and in practical effect against out-of-state principals by (1) subjecting them to treble damages, § 35.84; (2) requiring them to enter into written contracts with sales representatives, § 35.82; (3) declaring certain types of venue agreements in such contracts to be void, *id.;* and (4) prescribing stringent time limits for making commission payments to sales representatives, § 35.83, without subjecting in-state principals to these requirements.

### A

The Commerce Clause expressly authorizes Congress to "regulate Commerce with Foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. Although not explicitly stated in the Clause, it is well-established that the Commerce Clause does more than affirmatively grant power to Congress. *Wyoming v. Oklahoma,* — U.S. —, —, 112 S.Ct. 789, 800, 117 L.Ed.2d 1 (1992); *Quill Corp. v. North Dakota,* — U.S. —, —, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992). It also "directly limits the power of the States to discriminate against interstate commerce." *Wyoming,* — U.S. at —, 112 S.Ct. at 800. It is a self-executing limitation on the enactment of state laws that impose substantial burdens on interstate commerce, *Dennis v. Higgins,* 498 U.S. 439, —, 111 S.Ct. 865, 870, 112 L.Ed.2d 969 (1991) (quoting *South–Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 87, 104 S.Ct. 2237, 2240, 81 L.Ed.2d 71 (1984)). The Commerce Clause plays an important role in protecting the free flow of interstate trade, *Maine v. Taylor,* 477 U.S. 131,

1. Tacoa contends §§ 35.81–.86 are unconstitutional, but focuses principally upon §§ 35.82–.84. For the reasons stated *infra* at n. 4, the court concludes the remaining sections, §§ 35.-81, 35.85, and 35.86, are severable. The court does not declare these sections to be unconstitutional.

138–39, 106 S.Ct. 2440, 2447–48, 91 L.Ed.2d 110 (1986), by prohibiting regulations enacted to "benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 273–74, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988). The limitation on a state's power to regulate commerce, however, is not absolute. *Maine,* 477 U.S. at 138, 106 S.Ct. at 244. "[S]tates retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Id.* (quoting *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980)).

■ In determining whether a state law violates the "negative" or "dormant" Commerce Clause, the Supreme Court has developed an approach that distinguishes between statutes that affect interstate commerce only incidentally and regulate it evenhandedly, and those that on their face or in practical effect affirmatively discriminate against such commerce. *Maine,* 477 U.S. at 138, 106 S.Ct. at 2447; *Wyoming,* —— U.S. at —— n. 12, 112 S.Ct. at 800 & n. 12. When a state statute affects both interstate and local businesses equally and burdens interstate commerce only indirectly, the Court applies a balancing approach that considers whether the state's interest is legitimate, *Brown–Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986), and whether the burden on interstate commerce is "clearly excessive in relation to the putative local benefits," *Maine,* 477 U.S. at 138, 106 S.Ct. at 2447 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)). "[T]he extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike,* 397 U.S. at 142, 90 S.Ct. at 847.

■ A law that affirmatively discriminates on its face or in practical effect against transactions in interstate commerce, however, is subjected to a much stricter standard. Such a law may survive Commerce Clause analysis only if the statute is shown to serve a legitimate local purpose and the purpose "could not be served as well by available nondiscriminatory means." *Maine,* 477 U.S. at 138, 106 S.Ct. at 2447; *Wyoming,* —— U.S. at ——, 112 S.Ct. at 800 ("When a state statute clearly discriminates against interstate commerce, it will be struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.") (citations omitted).

### B

The court must first determine the appropriate standard of scrutiny to be applied to the Texas law.

Although today's decision appears to be the first to address the Texas statute, the court has the benefit of another district judge's analysis of a very similar Florida law. In *Rosenfeld v. Lu,* 766 F.Supp. 1131 (S.D.Fla.1991), Judge Ryskamp analyzed Fla.Stat. § 686.201 (1987).[2] This law provided that upon termination of a sales representative who does not have a written contract with his principal, the sales representative is entitled to commissions within 30 days of termination. *Id.* at 1133. If the commissions are not paid within the 30–day period, the sales representative has a cause of action for double the amount found to be due. *Id.* The statute defined a principal as a person who does not have a permanent or fixed place of business in Florida and who: (1) "[m]anufactures, produces, imports, or distributes a product for wholesale, except for fresh commodities;" (2) "[c]ontracts with a sales representative to solicit orders for the product;" and (3) "[c]ompensates the sales representative, in whole or in part, by commission." *Id.* (quoting Fla.Stat. § 686.201(1)(b)). Judge Ryskamp analyzed the statute under both a strict scrutiny and balancing approach, 766

---

**2.** *Rosenfeld* noted the analogous provisions of §§ 35.81–.86 to the Florida statute, but did not address directly the constitutionality of the Texas law. 766 F.Supp. at 1141 n. 7.

F.Supp. at 1135–1142, and held the law to be unconstitutional under both tests. *Id.* at 1142.

Tacoa contends a strict standard of review must be applied in this case because the Texas law imposes a number of burdens on out-of-state businesses only, and affirmatively discriminates against interstate commerce on its face and in practical effect. Havlir responds that such analysis is inapplicable to this statute because it discriminates neither directly, facially, nor in its practical effect.

1

■ Havlir argues the Texas law does not directly discriminate against interstate commerce because it "poses no obstacle to the free movement in commerce of articles manufactured or produced out-of-state, therefore it does not erect barriers to interstate trade." P. Resp. at 4. Havlir posits that because the statute regulates the relationship of sales representatives with the manufacturers who employ them, and not goods flowing in the interstate market, it is not a direct regulation of interstate commerce. Tr. Oral Arg. at 17–19. Therefore, a strict standard of scrutiny is not applicable to this indirect burden on interstate commerce. The court disagrees.

State statutes that impose burdens on out-of-state businesses that are not applicable to in-state businesses affect interstate commerce just as directly as those that regulate the flow of goods across state lines. *See Rosenfeld,* 766 F.Supp. at 1137 (rejecting argument that Florida statute that did not block foreign companies from conducting business within Florida did not violate Commerce Clause). In *Old Coach Dev. Corp., Inc. v. Tanzman,* 881 F.2d 1227 (3d Cir.1989), the Third Circuit considered whether a New Jersey statute violated the Commerce Clause. The law imposed burdens upon sellers of out-of-state land that were not similarly applied to sellers of New Jersey land. The panel noted the differences between the statute's application to sellers of land, especially the disparity in the possible penalty of imprisonment inflicted on sellers of out-of-state land. *Id.* at 1232–34. The court held that New Jer-

sey's regulatory scheme discriminated against interstate commerce on its face because it treated sellers of out-of-state land less favorably than sellers of New Jersey land. *Id.* at 1234. In reaching this conclusion, the court determined that the statute imposed a clear burden on interstate commerce even though the law did not regulate the flow of goods. *Id.* at 1232 ("Although New Jersey's regulatory scheme does not block the flow of commerce at the state's borders, it imposes requirements and costs on sellers of out-of-state land which are not imposed on sellers of New Jersey land.").

A state statute that imposes burdens only upon foreign manufacturers, and potentially precludes these manufacturers from engaging in business transactions, affects interstate commerce just as surely as a law that burdens the importation of an interstate manufacturer's products into the state. Both statutes may prevent out-of-state manufacturers from selling their products within the discriminating state, thus constricting the flow of interstate commerce to the benefit of in-state manufacturers. Accordingly, the Texas law has a direct impact on the flow of interstate commerce.

2

■ Havlir next posits that because the law applies only to out-of-state manufacturers that have sales representatives in Texas, and do not have a fixed or permanent place of business in Texas, the law is not facially discriminatory. This is so, Havlir reasons, because the statute does not apply uniformly to *all* out-of-state manufacturers that have sales representatives in Texas. According to Havlir, state regulations found to discriminate facially against interstate commerce have applied to entire categories of out-of-state commerce or have been outright prohibitions of movement of goods across state lines. P.Resp. at 4. The court declines to accept this reasoning.

The size and number of businesses, both in-state and out-of-state, affected by a discriminatory statute are irrelevant to the Commerce Clause analysis. *Limbach,* 486 U.S. at 276–77, 108 S.Ct. at 1809–10; *Wyoming,* — U.S. at —, 112 S.Ct. at 801

(volume of commerce affected is of "no relevance to the determination whether a State has discriminated against interstate commerce"). An argument similar to Havlir's was presented in *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 39–40, 100 S.Ct. 2009, 2017–18, 64 L.Ed.2d 702 (1980). There the state argued the Florida statute at issue, which prohibited out-of-state bank holding companies, banks, and trust companies from engaging in certain business activities in Florida, was not *per se* invalid because it did not exclude *all* out-of-state investment companies from entering Florida. *Id.* The state argued the statute discriminated against "a particular kind of corporate organizational structure more than it does against the origin or citizenship of a particular business enterprise." *Id.* at 40, 100 S.Ct. at 2017. The Supreme Court rejected this rationale, holding the Florida statute discriminated against out-of-state business organizations because only those financial institutions with principal operations outside of Florida were burdened by the statute. *Id.* at 42, 100 S.Ct. at 2018. The law therefore discriminated among "affected businesses according to the extent of their contacts with the local economy." *Id.* The law, on its face and in effect, "displays a local favoritism or protectionism that significantly alters its Commerce Clause status." *Id.*

The Texas statute also discriminates among manufacturers according to the location of their principal place of business. The statute requires that out-of-state manufacturers who engage in business with a Texas sales representative enter into a written contract. § 35.82. The contract may not validly establish venue for an action related to the contract in a state other than Texas. *Id.* If the foreign manufacturer fails to pay commissions to a sales representative as required in the written contract—or if no contract exists, within 30 days after termination—the manufacturer is liable for treble damages plus attorney's fees and costs. § 35.84. None of these provisions applies to manufacturers with a permanent or fixed place of business in Texas. Thus, like the Florida law at issue in *Rosenfeld,* the Texas statute does not apply evenhandedly and is therefore facially discriminatory.

### 3

■ Havlir contends the Texas law does not discriminate against interstate commerce on its face, and does not affirmatively discriminate in its practical effect. In support of this contention, Havlir relies on *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). At issue in *Exxon* was a Maryland statute that prohibited producers and refiners of petroleum products from opening or operating gasoline stations in the state of Maryland. *Id.* at 120 n. 1, 98 S.Ct. at 2211 n. 1. Various oil companies challenged the statute, contending it violated the Commerce Clause because it discriminated against producers and refiners, which were out-of-state businesses, in favor of independent retailers, which were mostly local concerns. In analyzing the statute, the Court held that the mere fact that the burden of a statute falls on some interstate businesses does not automatically establish a claim of discrimination against interstate commerce. *Id.* at 126, 98 S.Ct. at 2214. Critical to the Court's Commerce Clause analysis, however, was the fact that the statute did not discriminate on its face between out-of-state and local producers or refiners. *Lewis,* 447 U.S. at 42, 100 S.Ct. at 2018 (analyzing *Exxon*). In fact, the Court distinguished the facts in *Exxon* from cases where the challenged law "prohibit[ed] the flow of interstate goods, place[d] added costs upon them, or distinguish[ed] between in-state and out-of-state companies." *See Exxon,* 437 U.S. at 126, 98 S.Ct. at 2214.

Unlike the Maryland law at issue in *Exxon,* the Texas law, both on its face and in effect, draws a distinction between out-of-state manufacturers and in-state manufacturers by placing burdens on foreign manufacturers that are not applicable to local manufacturers. The practical effect of the statute undoubtedly is to discriminate against interstate manufacturers.

Havlir also argues that the discriminatory effect is very narrow in scope because the burdens imposed by the law are avoid-

able. The statute applies only to those manufacturers without a place of business in Texas and inflicts a penalty only if a foreign manufacturer breaches its agreement with a sales representative. Thus out-of-state manufacturers may avoid the consequences of the statute by establishing a place of business in Texas and by paying sales representatives the commissions due them. According to Havlir, the avoidable nature of the law preserves its constitutionality.

Judge Ryskamp rejected the same argument in *Rosenfeld*, holding that no such exception has been recognized by the Supreme Court and that the proposition has no foundation in Commerce Clause jurisprudence. 766 F.Supp. at 1137. Moreover, the Supreme Court has held that the extent of the discriminatory effect of a statute is irrelevant for the purpose of Commerce Clause analysis. *See Wyoming*, — U.S. at —, 112 S.Ct. at 801 (rejecting argument that Oklahoma law affected only a "small portion" of the Oklahoma coal market, without placing an "overall burden" on interstate commerce). "The volume of commerce affected measures only the *extent* of the discrimination; it is of no relevance to the determination whether a State has discriminated against interstate commerce." *Id.* Regardless of the avoidability of the burdens inflicted by the Texas law, the statute clearly discriminates on its face and in effect against interstate commerce.

Because the Texas law directly discriminates against interstate commerce on its face and in practical effect, the court must apply a strict scrutiny standard to determine whether the statute violates the Commerce Clause.

## C

■ A state statute that is subject to heightened scrutiny may be upheld only if it serves a legitimate public interest and this purpose cannot be served as well by nondiscriminatory means. *Maine*, 477 U.S. at 138, 106 S.Ct. at 2447. Once the statute is shown to discriminate directly against interstate commerce, the burden of justify-

ing the discriminatory statute in terms of the local benefits derived from it, and of the unavailability of nondiscriminatory alternative means, falls upon the state. *Id.*

■ Havlir contends the statute withstands strict scrutiny because it serves a legitimate local purpose that could not be as well served by available nondiscriminatory means. According to Havlir, the statute protects Texas sales representatives from abusive behavior of out-of-state manufacturers, and this purpose may not be served as well by imposing the statute on all businesses, both in-state and out-of-state. Havlir posits the requirements regarding the payment of commissions are not discriminatory because they are imposed upon all businesses through the common law of contracts. Only the treble damages provision, § 35.84, applies solely to out-of-state manufacturers. Havlir argues this distinction between in-state and out-of-state manufacturers is necessary because out-of-state manufacturers, knowing that bringing an action against and collecting from an out-of-state manufacturer is more difficult, have traditionally abused sales representatives. The court declines to accept Havlir's arguments.

Even if the court assumes that protecting in-state sales representatives from prevalent abusive behavior of manufacturers by encouraging written contracts and prompt payment of commissions is a legitimate purpose, it does not justify the disproportionate burden the statute places on out-of-state manufacturers. Havlir has offered no reasons to explain why this purpose cannot be served as well by available nondiscriminatory means, such as imposing these requirements upon all manufacturers, both in-state and out-of-state. *See Old Coach*, 881 F.2d at 1234; *Rosenfeld*, 766 F.Supp. at 1141.

Havlir also urges that the statute is justified because it is more expensive and time consuming to sue and collect judgments from manufacturers without a place of business in Texas. The *Rosenfeld* court found this argument unpersuasive. 766 F.Supp. at 1140. Judge Ryskamp held that although it might be more difficult to serve process upon foreign manufacturers, this

fact did not justify burdening foreign manufacturers to the exclusion of in-state manufacturers because Florida sales representatives could bring an action in Florida courts against an out-of-state manufacturer pursuant to the Florida long-arm statute. *Id.* (citing *Bendix Autolite Corp. v. Midwesco Enters., Inc.,* 486 U.S. 888, 893, 108 S.Ct. 2218, 2221–22, 100 L.Ed.2d 896 (1988)). Judge Ryskamp also rejected the argument that judgments against out-of-state businesses were difficult to enforce, noting that the Constitution's Full Faith and Credit Clause required other states to enforce any judgment rendered in Florida. *Id.*

Like Florida, Texas has a long-arm statute that permits plaintiffs in Texas courts to sue and serve process upon out-of-state entities. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–.045 (West 1986 & Supp. 1993). Moreover, any litigation, whether against in-state or out-of-state manufacturers, is potentially costly and time-consuming for a sales representative. The court agrees with *Rosenfeld* that any difficulty a Texas sales representative may encounter in bringing and collecting a claim against an out-of-state manufacturer is not sufficient justification for subjecting foreign and domestic manufacturers to disparate regulations.[3]

Accordingly, §§ 35.82–.84 fail to survive Commerce Clause analysis because even if they serve a legitimate purpose, the purpose may be accomplished equally as well with a nondiscriminatory statute. The court declares these portions of the Texas Business and Commerce Code unconstitutional,[4] and grants Tacoa's motion to dismiss Havlir's claim based on the statute.[5]

SO ORDERED.

---

3. Havlir argues that the heightened scrutiny standard is inapplicable and the court should apply the balancing test as enunciated in *Pike v. Bruce Church.* The court disagrees, but notes that even if it were to apply the less strict balancing test, the court would find that the Texas statute violates the Commerce Clause. Assuming *arguendo* that the purpose of the statute is legitimate, "it could be promoted as well with a lesser impact on interstate activities." *Pike,* 397 U.S. at 142, 90 S.Ct. at 847; *see also Rosenfeld,* 766 F.Supp. at 1142 (holding that the Florida statute was also invalid under the *Pike* balancing test). Thus the statute does not survive scrutiny under either standard.

4. The court discerns no basis to conclude §§ 35.81, 35.85, and 35.86 are unconstitutional. The question therefore becomes whether these sections of the Code are severable from those that the court has found to be constitutionally infirm. Neither party has addressed this issue in its briefing, but principles of judicial restraint counsel the court not to rule more broadly than is warranted.

    The severability of these sections from those found to be unconstitutional is controlled by state law. *Davis v. Michigan Dep't of the Treasury,* 489 U.S. 803, 818, 109 S.Ct. 1500, 1509, 103 L.Ed.2d 891 (1989). The portion of the Texas Business and Commerce Code applicable in the instant case does not contain a severability provision. The court therefore looks to the Texas Code Construction Act, Tex. Gov't Code Ann. §§ 311.001–.032 (West 1986 & Supp.1993), to decide the question. Section 311.032 provides that statutes lacking a severability provision are severable to the extent the invalidity of one section does not affect other sections that can be given effect without the invalid provision. Tacoa has not established that §§ 35.81 (definitions), 35.85 (jurisdiction), and 35.86 (waiver) are affected by, and cannot be given effect without, the statutory provisions that the court today holds are unconstitutional. The court concludes these sections are severable and are not declared unconstitutional.

5. Tacoa also requests attorney's fees and costs incurred in filing its motion. Tacoa has shown no basis in law for such relief and the request is therefore denied.