**PALMER–LUCAS, INC., Plaintiff,**

v.

**MARTIN'S HEREND IMPORTS, INC., Defendant.**

**Civ. A. No. 92–2430.**

United States District Court,
W.D. Pennsylvania.

July 14, 1993.

Joseph E. Schmitt, Stonecipher Cunningham Beard & Schmitt, Pittsburgh, PA, for plaintiff.

Michael E. Lowenstein, Reed Smith Shaw & McClay, Pittsburgh, PA, Kenneth J. Diamond, Chadbourne & Park, Washington, DC, for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

Presently before the court is a motion filed by defendant Martin's Herend Imports, Inc. ("Martin's") asking this court to dismiss Count II of the complaint of Palmer–Lucas ("Palmer"). The basis of motion to dismiss Count II is defendant's assertion that the Pennsylvania Commissioned Sales Representatives Act, 43 Pa. S.A. §§ 1471–78, is unconstitutional under the Commerce Clause of the United States Constitution.

Defendant Martin's is engaged in the business of importing and selling Herend porcelain products to retailers throughout the United States. Palmer served as a sales representative for Martin's pursuant to an oral agreement entered into between the parties in the early 1960's. Under the agreement Palmer was appointed to be Martin's exclusive sales representative within approximately a six-state area, including Pennsylvania. (Complaint at paragraph 7). The relationship between the two parties grew, until by 1990 Palmer was Martin's exclusive sales representative within the United States except for portions of the District of Columbia and the States of Maryland, West Virginia and Virginia. The relationship eventually deteriorated, according to the plaintiff, and beginning in 1991 Martin's began reducing the areas where Palmer's would serve as sales representative. Finally Martin notified Palmer that it was ending the relationship effective August 30, 1992.

Palmer in its complaint asserts breach of contract, violation of the Pennsylvania Commissioned Sales Representatives Act, and quantum meruit. It is the Pennsylvania statute, 43 Pa.S.A. § 1471 et seq., that forms the basis of the current motion to dismiss. The pertinent sections of the Act state the following:

§ 1471. Definitions.

"Principal." Any person who does not have a permanent or fixed place of business in this Commonwealth and who does all of the following:

(1) Engages in the business of manufacturing, producing, importing or distributing a product for sale to customers who purchase such products for resale.

(2) Utilizes sales representatives to solicit orders for such product.

(3) Compensates sales representatives, in whole or in part, by commission.

"Sales representative." A person who contracts with a principal to solicit wholesale orders from retailers rather than consumers and who is compensated, in whole or in part, by commission. The term does not include one who places orders or purchases for his own account for resale or one who is an employee of a principal.

§ 1472. Contracts.

Contents—When a sales representative enters into an agreement with the principal for the solicitation of wholesale orders, a written contract shall be entered into setting forth the following:

(1) The form of payment and the method by which it is to be computed and made.

(2) A specified period for the performance of services.

(3) The manner and extent to which job-incurred expenses are to be reimbursed.

(4) A specified geographical territory or specified accounts.

§ 1473. Termination

If a contract between a sales representative and a principal is terminated, the principal shall, within 14 days after payment would have been due under the contract if the contract had not been terminated, pay to the sales representative all commissions accrued under the contract.

§ 1475. Noncompliance

(a) General.—A principal who willfully fails to comply with the provisions of sections 3 or 4 shall be liable to the sales representative in a civil action for:

(1) All commissions due the sales representative, plus exemplary damages in an amount not to exceed two times the commissions due the sales representative.

(2) The cost of the suit, including reasonable attorney fees.

Defendant Martin's argues that the statute is discriminatory on its face, in that it imposes burdens upon out-of-state businesses

such as Martin's, and as such violates the Commerce Clause. The Commerce Clause specifically grants Congress the power "to regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Although the clause does not expressly limit state interference with interstate commerce, the Supreme Court nonetheless has historically held that the clause prohibits states from taking certain actions regarding interstate commerce even absent congressional action. *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 87, 107 S.Ct. 1637, 1648, 95 L.Ed.2d 67 (1987). The clause, as applied by the judiciary, "acts as a limitation on the authority of the states designed to preclude the establishment of protectionist state barriers that would threaten the operation of the federal union." *Norfolk Southern Corp. v. Oberly*, 822 F.2d 388, 407 (3d Cir. 1987).

In analyzing the scope of the dormant commerce clause, this court has articulated three standards of review:

(1) state actions that purposefully or arbitrarily discriminate against interstate commerce or undermine uniformity in areas of particular federal importance are given heightened scrutiny;

(2) legislation in areas of peculiarly strong state interest is subject to very deferential review; and

(3) the remaining cases are governed by a balancing rule, under which state law is invalid only if the incidental burden on interstate commerce is clearly excessive in relation to the putative benefits. *Old Bridge Chemicals v. N.J.D.E.P.*, 965 F.2d 1287, 1291 (3d Cir.1992).

In deciding which test applies, we bear in mind that the Supreme Court has recognized that no clear line distinguishes those regulations subject to heightened scrutiny, which will almost always be invalidated, and the category reviewable under a balancing test. *Id.*

 Statutes which discriminate on their face or in their plain effect against interstate commerce are subject to height-

ened scrutiny. *Old Coach Development Corp., Inc. v. Tanzman*, 881 F.2d 1227, 1231 (3d Cir.1989). This heightened scrutiny places the burden on the state to "demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." *Id., quoting Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). Because the Pennsylvania statute at issue applies to out-of-state corporations,[1] it comes within the class of statutes that are subject to heightened scrutiny. *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686, 689 (3d Cir.1990).

The court must first determine the appropriate standard of scrutiny to be applied to the Pennsylvania statute. The *Old Coach Development* Third Circuit case was considered as guidance for a Texas district court that dealt with a similar statute to the Pennsylvania statute at issue in this case. The court in *John Havlir & Assoc., Inc. v. Tacoa, Inc.*, 810 F.Supp. 752, 756 (N.D.Tex.1993) held that strict scrutiny should apply to the statute because "A state statute that imposes burdens only upon foreign manufacturers, and potentially precludes these manufacturers from engaging in business transactions, affects interstate commerce just as surely as a law that burdens the importation of an interstate manufacturer's products into the state. Both statutes may prevent out-of-state manufacturers from selling their products within the discriminating state, thus constricting the flow of interstate commerce to the benefit of in-state manufacturers." *Id.*

*Havlir* is also instructive in that the Texas statute required that out-of-state manufacturers who engage in business with a Texas sales representative enter into a written contract. Also similar to the statute before this court was the provision that if the foreign manufacturer fails to pay commissions to a sales representative as required in the contract, the manufacturer is liable for treble damages plus attorney's fees and costs (in the Pennsylvania statute, the manufacturer is liable for two times the commissions due plus attorney's fees and costs). The *Havlir* court

---

**1.** § 1471 "Principal." Any person who does not have a permanent or fixed place of business in

this Commonwealth and does all of the following . . .

found that because the provisions of the statute did not apply to manufacturers with a permanent or fixed place of business in Texas, the statute did not apply evenhandedly, and was therefore facially discriminatory. The court found "that the practical effect of the statute undoubtedly is to discriminate against interstate manufacturers." *Id.* This court agrees with the reasoning of the *Havlir* court and finds that because 43 Pa. S.A. 1471 *et seq.* discriminates against interstate commerce on its face and in practical effect, the court must apply a strict scrutiny standard to determine whether the statute violates the Commerce Clause.

"To pass the heightened scrutiny test, the state is required to 'demonstrate both that the statute "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means.'" *Juzwin v. Asbestos Corp., Ltd.,* 900 F.2d 686, 689 (3d Cir.1990), *quoting Maine v. Taylor,* 477 U.S. at 138, 106 S.Ct. at 2447. In practice, such heightened scrutiny is applied with considerable rigor and turns out to be 'a virtually *per se* rule of invalidity.'" *Id.* Once again this court finds itself persuaded by the reasoning in *Havlir.* Palmer argues, as did the plaintiff in *Havlir,* that "protecting in-state sales representatives from prevalent abusive behavior of manufacturers by encouraging written contracts and prompt payment of commissions is a legitimate purpose." *Id.* However this court believes that the *Havlir* was correct when it assumed, *arguendo,* that the statute had a legitimate purpose, and that the plaintiff offered no reason why this legitimate purpose could not be served by nondiscriminatory means, such as imposing these requirements upon all manufacturers, both in-

state and out-of-state. *Id., quoting Old Coach,* 881 F.2d at 1234. This court is of the opinion that the Pennsylvania Commissioned Sales Representatives Act, 43 Pa.S.A. § 1471 *et seq.* is unconstitutional under the Commerce Clause of the United States Constitution, and as a result defendant Martin's Herend Imports motion to dismiss Count II of the complaint will be granted.

The court feels compelled to mention that the possible constitutional shortcomings of the Act were on the minds of the Pennsylvania legislators as the bill worked its way into its final form. For example, on October 27, 1987 an earlier draft of the bill was declared unconstitutional by the Pennsylvania House of Representatives by a vote of 110 to 83. Some of the legislators apparently were well aware of the possible constitutional difficulties of the bill.[2] The bill was again reconsidered on September 28, 1988. At that time the legislators took up the issue of the bill's constitutional infirmities, and determined that they had overcome the constitutional problems. An amendment was introduced, known as the Cowell Amendment, that was supposed to enable the bill to overcome constitutional hurdles.[3] The end result was that Rep. Ryan withdrew his question regarding the constitutionality of the bill, and the bill in its present form was signed into law on December 21, 1988.

This debate that took place regarding the constitutionality of the bill in the Pennsylvania Assembly makes the court aware that it must not lightly declare the bill unconstitutional when that very issue was taken into consideration by the legislative body in the course of drafting the legislation. However, where Rep. Ryan was able to withdraw his question regarding the constitutionality of

---

**2.** For instance, during floor debate, Rep. McVery stated: "I suggest to the membership that passage of HB 1135 would put into place an unconstitutional statute insofar as it restricts and applies only to those manufacturers outside of Pennsylvania and denies those manufacturers inside Pennsylvania the equal protection of that particular contractual law ..." *Commonwealth of Pennsylvania Legislative Journal,* October 27, 1987 session, at page 1579.

**3.** Rep. Ryan, the main opponent of the bill on constitutional grounds, apparently was con-

vinced that the bill, with the Cowell Amendment, would pass constitutional muster. Rep. Ryan stated: "Mr. Speaker, I understand the dilemma the Chair has. The bill before us has been found to be unconstitutional. It was principally my argument and my raising of the question of constitutionality that caused this to happen. I think, however, Mr. Speaker, that what Mr. Cowell is attempting to do now is address the very points that I raised on the constitutional issue, and if his amendment is inserted, a lot of my constitutional argument would fail ..." *House Legislative Journal,* September 28, 1992 at 1598.

the bill, this court must address the issue directly. As stated earlier, under the heightened scrutiny applied to a facially discriminatory statute, the State of Pennsylvania has failed to show that the regulations serve a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means. Thus the court declares the Pennsylvania Commissioned Sales Representative Act unconstitutional, and will grant Martin's Herend Imports, Inc.'s motion to dismiss Count II of the complaint.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 14th day of July, 1993,

IT IS HEREBY ORDERED that the motion to dismiss Count II of the complaint filed by the defendant, Martin's Herend Imports, Inc., is GRANTED, and Count II of the complaint of the plaintiff, Palmer–Lucas, Inc., is DISMISSED.