**Donnie CECIL, Plaintiff,**

v.

**DUCK HEAD APPAREL COMPANY, INC., Defendant.**

Civ. A. No. 93–138.

United States District Court,
W.D. Kentucky,
Owensboro Division.

March 30, 1995.

**156**

Jeff S. Taylor, Owensboro, KY, M. Kirby Gordon, II, Gordon & Gordon, Owensboro, KY, for plaintiff.

K. Gregory Haynes, Virginia Hamilton Snell, Mitzi Denise Wyrick, Wyatt, Tarrant & Combs, Louisville, KY, James Douglas Cockrum, D. Patton Pelfrey, Brown, Todd & Heyburn, Louisville, KY, Lovic A. Brooks, III, John Charles Ormond, Jr., Constangy, Brooks & Smith, Columbia, SC, Henry L. Parr, Jr., Wyche, Burgess, Freeman & Parham, Greenville, SC, for defendant.

### MEMORANDUM OPINION AND ORDER

COFFMAN, District Judge.

This matter is before the Court upon the motion of the defendant, Duck Head Apparel Company, Inc. ("Duck Head"), to dismiss.

[Record No. 3.] Fully briefed, this matter is ripe for decision.

### FACTUAL BACKGROUND

On September 30, 1993, the plaintiff, Donnie Cecil ("Cecil"), filed a complaint in Daviess Circuit Court against Duck Head. Cecil alleged common law breach of contract (Count I), negligent or intentional conversion (Count II), and violations of the Kentucky Sales Representatives' Contracts Statute, K.R.S. Section 371.370 *et seq.* (Count III). On October 14, 1993, Duck Head was served with the complaint. Duck Head has filed notice of removal along with its motion to dismiss. The motion to dismiss now before the Court seeks to dismiss Count III of the Complaint on the grounds that K.R.S. § 371.375 is unconstitutional because it violates the Commerce Clause and the Equal Protection Clause of the United States Constitution.

Duck Head is incorporated in Tennessee, with its principal place of business located in Georgia. Duck Head is a wholly-owned subsidiary of Delta Woodside, incorporated in South Carolina. Cecil was employed as a sales representative for Duck Head's predecessor, O'Bryan Bros. of Delaware, Inc. ("O'Bryan"), from 1980 through December 1989. Cecil was hired as an independent sales representative by Duck Head to cover the sales territory including Kentucky and Tennessee in January 1990, when Duck Head acquired O'Bryan.

Cecil and Duck Head continued this relationship until November 2, 1991, when Cecil was advised that Duck Head's sales representatives were to become salaried employees of Duck Head effective July 1, 1992. Although the parties dispute the manner of termination, the relationship between Cecil and Duck Head ended in December of 1991. Cecil states that upon termination, Duck Head promised to pay him all commissions for sales orders booked by him prior to the date of termination. Cecil alleges in Count III that Duck Head was required to pay these outstanding commissions pursuant to the Kentucky Sales Representatives' Contracts Statute ("the Statute"), but that Duck Head failed to do so. The alleged violation

of the Statute is the only count in issue in this motion to dismiss.

## ANALYSIS

The Statute provides substantive rights and remedies to commissioned sales representatives who enter into agreements with principals. K.R.S. § 371.375(2) of the Statute states as follows:

> A principal who fails to comply with the provisions of Section 1 shall be liable to the sales representative in a civil action for:
>
> (a) All amounts due the sales representative, plus exemplary damages in an amount not to exceed two (2) times the commissions due the sales representatives;
>
> (b) Attorney's fees actually and reasonably incurred by the sales representative in the action and court costs.

Ky.Rev.Stat.Ann. § 371.375(2) (Michie Supp. 1995) (effective July 15, 1988). The Statute defines the term "sales representative" as a person who contracts with a "principal" to solicit wholesale orders from retailers and is compensated, in whole or in part, by commission. Ky.Rev.Stat.Ann. § 371.370(4) (Michie Supp.1995) (effective July 15, 1988). Section 371.370(3) of the Statute defines the term "principal" as follows:

> (3) "Principal" means a person who **does not have a permanent or fixed place of business in this state** and who:
>
> (a) Manufactures, produces, imports, or distributes a tangible product for wholesale;
>
> (b) Contracts with a sales representative to solicit orders for the product; and
>
> (c) Compensates the sales representatives, in whole or in part, by commission.

Ky.Rev.Stat.Ann. § 371.370(3) (Michie Supp. 1995) (effective July 15, 1988) (emphasis added). It is clear that Cecil is a sales representative and that Duck Head is a principal under the rubric of the Statute.

The remedies available to commissioned sales representatives against principals under this Statute are not the exclusive remedies under which a plaintiff may proceed. The statutory rights and remedies are supplemental to any additional common law rights or remedies. Ky.Rev.Stat. Ann. § 371.375(4) (Michie Supp.1995) (effective July 15, 1988). The Statute precludes principals and sales representatives from waiving the provisions of the Statute through contract. Ky.Rev.Stat.Ann. § 375.385 (Michie Supp.1995) (effective July 15, 1988).

### *A. Commerce Clause*

■ The Commerce Clause gives the Federal Government the power to regulate commerce, while limiting the state's power to interfere with interstate commerce. U.S. Const. art. I § 8, cl. 3. The Commerce Clause is a self-executing limitation on the power of the states to enact laws imposing substantial burdens on commerce. *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991).

■ The Commerce Clause prohibits state regulations that are enacted to benefit instate economic interests by burdening out-of-state competitors. *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1978). However, states do have the power to regulate matters that affect interstate commerce, if the regulation is invoked for matters of legitimate local concern with no available alternative means. *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986).

In determining whether a state law violates the Commerce Clause, the Supreme Court has developed an approach that distinguishes between statutes that affect interstate commerce only incidentally and regulate it evenhandedly, and those that on their face or in practical effect affirmatively discriminate against such commerce.

■ If a state statute affects both local and interstate commerce equally and only indirectly burdens interstate commerce, courts are to apply a balancing test which considers the nature of the local interests involved and whether such interests could be equally promoted without a burden on interstate commerce. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ If a state statute or regulation is facially discriminatory or affirmatively discriminates by practical effect, the law is subjected to a much stricter standard—strict scrutiny. *Wyoming v. Oklahoma*, 502 U.S. 437, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992). Facial discrimination by itself may be a fatal defect and at a minimum invokes the strictest scrutiny. *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250 (1979).

■ The Kentucky Statute discriminates, on its face, against out-of-state principals. The Statute does not apply to agreements between sales representatives and principals who have a permanent or fixed place of business in Kentucky. Because it facially discriminates against out-of-state principals, the Kentucky Statute must be strictly scrutinized. The Statute will survive strict scrutiny under the Commerce Clause only if the Statute serves a legitimate local purpose and that purpose could not be served by available non-discriminatory means. *Maine*, at 138, 106 S.Ct. at 2447.

Several district courts have found similar state statutes violative of the Commerce Clause. In *Rosenfeld v. Lu*, 766 F.Supp. 1131 (S.D.Fla.1991), considering facts virtually identical to those presented here, the court found an almost identical statute invalid under the Commerce Clause. The court held that the statute was discriminatory against interstate commerce on its face and that its overall effect burdened interstate commerce. Under the *Pike* balancing test, alternatively, the Court found that the Florida statute substantially restrained interstate commerce and there were "less burdensome schemes available to preserve the local interests." *Rosenfeld*, at 1142. *See also John Havlir Associates, Inc. v. Tacoa, Inc.*, 810 F.Supp. 752 (N.D.Tex.1993).

In *Johnson, MacDonald & Associates v. Webster Plastics*, 856 F.Supp. 1249 (S.D.Ohio 1994) and *Palmer–Lucas, Inc. v. Martin's Herend Imports, Inc.*, 827 F.Supp. 345 (W.D.Pa.1993), Ohio and Pennsylvania district courts respectively found their states sales representatives statutes violative of the commerce clause. Each of these courts found that the legitimate purpose of protect- ing in-state sales representatives could be served by non-discriminatory means such as imposing requirements upon both in-state and out-of-state manufacturers.

Like these other states' statutes, Kentucky's statute burdens only out-of-state principals. A state statute that imposes burdens only upon foreign manufacturers, and potentially precludes these manufacturers from engaging in business transactions, affects interstate commerce just as surely as a law that burdens the importation of an interstate manufacturer's products into the state. Both statutes may prevent out-of-state manufacturers from selling their products within the discriminating state, thus constricting the flow of interstate commerce to the benefit of in-state manufacturers. *Havlir*, at 756. Accordingly, the Kentucky law has a direct impact on the flow of interstate commerce. That direct impact unconstitutionally burdens interstate commerce, and therefore, the Statute is invalid.

### B. Equal Protection Clause

■ A statute that expressly discriminates against a class of persons is subject to constitutional scrutiny under the Equal Protection Clause. If a statute adversely affects a fundamental right or a suspect class, strict scrutiny is applied. However, if a statute unequally applies economic or commercial regulations, as the Kentucky Statute does, the validity of the statute is determined using the rational basis test.

■ Under the rational basis test, a statute will be upheld only if the challenged regulation or classification is rationally related to a legitimate state purpose. *Exxon Corp. v. Eagerton*, 462 U.S. 176, 195, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983).

■ The Equal Protection Clause forbids a state to discriminate in favor of its own residents solely by burdening the residents of other states. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). To subject an out-of-state principal, and not an in-state principal, to a penal statute is a clear denial of equal protection. The in-state principal should have equal responsibility and equal liability.

*See Moore v. Samuel Miller & Co.,* 1987 WL 342392 (N.D.Ala.1987).

The Kentucky Statute is discriminatory. Such invidious discrimination is inconsistent with the fourteenth amendment. The statute cannot stand.

Accordingly,

IT IS ORDERED as follows:

1) the defendant's motion to dismiss Count III of the plaintiff's complaint is hereby GRANTED.