Valerie LETT, Plaintiff,

v.

**PAYMENTECH, INC., and Does 1 through 30, inclusive, Defendants.**

No. C99–2423 MJJ.

United States District Court, N.D. California.

Oct. 12, 1999.

Scott H.Z. Sumner, Hinton & Alfert, Walnut Creek, CA, Harvey Sohnen, Patricia M. Kelly, Harvey Sohnen Law Offices, Walnut Creek, CA, for Valerie Lett.

Henry D. Lederman, Brian L. Johnsrud, Littler Mendelson, Walnut Creek, CA, for Paymentech, Inc.

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND DENYING DEFENDANT'S MOTION TO DISMISS**

JENKINS, District Judge.

## INTRODUCTION

Before the Court are defendant Paymentech's motion for partial judgment on the pleadings (Fed.R.Civ.P.12(c)), and motion to dismiss the fifth cause of action (Fed.R.Civ.P.12(b)(6)). Paymentech challenges the constitutionality of two sections of the California Labor Code asserted against it by Valerie Lett ("Lett"), which pertain to companies without a permanent and fixed place of business within the State of California. For the reasons outlined in this memorandum and order, the Court GRANTS IN PART Paymentech's motion, finding that Sections 2751 and 2752 of the California Labor Code are violative of both the Commerce Clause and of the Equal Protection Clause of the United States Constitution, and that Lett's claim for violation of public policy is not legally cognizable; and DENIES IN PART Paymentech's motion, finding that Lett's breach of implied covenant claim survives a motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff Valerie Lett was a sales representative for Paymentech and its corporate predecessors-in-interest from 1993 until 1998. During her employment, Lett worked out of her home and was paid on a commission basis by Paymentech. There was no written employment agreement between Lett and Paymentech. Complaint, ¶ 19. Paymentech is a Nevada corporation, has its principal place of business in Texas, and employed Lett and at least one other person in California during her tenure with the company. Paymentech is registered as a foreign corporation with the California Secretary of State.

Lett and Paymentech dispute the structure of the commission system under which she was paid for her work. Specifically, Lett claims she was led to believe that she would receive a commission in "points" based on all contracts she obtained. Paymentech allegedly took an inconsistent position as to several contracts, by conditioning the commissions paid to Lett on the underlying profitability of the transactions. The parties, thus, potentially disagree on both the terms of Lett's commission agreement, as well as the actual profitability of some of the transactions she undertook on behalf of the company.

Lett's complaint alleges five state-law causes of action: (1) failure to pay wages, waiting time and attorneys' fees under the

California Labor Code; (2) a treble damages claim for breach of a commission agreement by a principal lacking a "fixed and permanent" place of business in California; (3) a claim for violation of public policy; (4) breach of contract, and (5) breach of the implied covenant of good faith and fair dealing. Paymentech removed Lett's action from state court, and filed with this Court a motion for partial judgment on the pleadings pursuant to Fed.R.Civ.P. 12(f). Paymentech challenges the legal viability of the second, third and fifth causes of action by its motion.[1]

## LEGAL ANALYSIS

### I. Claims Under the California Labor Code

#### A. California Statute

The challenged provisions of the California Labor Code read as follows:

§ 2751. Contracts for Employees Paid by Commission

Whenever any employer who has no permanent and fixed place of business in this State enters into a contract of employment with an employee for services to be rendered within this State and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.

The employer shall give a signed copy of each such contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee.

As used in this section, "commissions" does not include short term productivity bonuses such as are paid to retail clerks; and it does not include bonus and profit-sharing plans, unless there has been an offer by the employer to pay a fixed percentage of sales or profits as compensation for work to be performed.

§ 2752. Liability to Civil Action

Any employer who does not employ an employee pursuant to a written contract as required by Section 2751 shall be liable to the employee in a civil action for triple damages.

The California statute addresses at least two distinct problems: the wage risk inherent in all commission-based employment, and the risk to employees in accepting work from an employer without a fixed and permanent place of business. When combined, these risks can increase the likelihood of employees being cheated out of commissions, promised orally as an inducement to the employee, that are unenforceable due to the opaqueness of the commission structure, the employer's ability to be judgment-proof due to its transience, and the absence of written means of proof. The California law, as several statutes in other states (*see infra*), seeks to protect commission employees by (1) requiring, where the employer does not have a fixed and permanent place of business in California, a written contract explaining the commission structure at the time of employment and (2) providing employees recourse to treble damages where the written contract requirement is not followed. The Court is aware of no provision of California law that would require a written employment contract, or subject a class of employers to treble damages on breach of contract (or, for that matter, any other civil action).

There are thus two queries which determine the applicability in a given case of

---

1. Paymentech's motion challenges the constitutionality of two state statutory provisions, Cal. Labor Code §§ 2751–2752. In cases where a state statute is challenged constitutionally, Civil Local Rule 3–8(b) requires that the movant file notice of the challenge to the Chief Judge of the Court, and serve a copy on the California Attorney General. Paymentech filed proof of service of the notice on May 21, 1999, and has thus complied with the Civil Local Rules.

sections 2751 and 2752 to employers. First, does the employer have a permanent and fixed place of business (if it has one at all) within the State of California? Second, does the contemplated method of paying the employee involve commissions? If the answer to the first question is yes, the statute does not apply. Where the answer to the first question is no, the statute applies only where the answer to the second question is yes.

The framework of section 2751 thereby creates at least four distinct categories of employers based on the existence or non-existence of a fixed and permanent place of business in California, and the use or non-use of commissions to remunerate employees. The first category is made up of intrastate transient employers, without any permanent and fixed place of business in California, yet doing business exclusively within the state. The second category consists of interstate transient employers, without any permanent and fixed place of business anywhere, doing business in California and elsewhere. The third category is made up of employers, like Paymentech, with a fixed and permanent place of business that is outside of California. The fourth category consists of employers with a fixed and permanent place of business within California. The statute at issue affects only the first three categories of employers, subjecting them to a written contract requirement and exposure to treble damages in any civil action for failing to do so, wherever the method of payment contemplated under the contract involves commissions. The fourth category of employers, based in California, need not enter written contracts with its employees, even where their method of payment involves commissions, nor do they risk treble damages for a failure to enter written employment contracts with commission employees.

### B. Similar Statutes In Other States

Paymentech has directed the Court's attention to other state statutes which were similar in effect to sections 2751 and 2752. All attempted to place regulations on businesses lacking a fixed place of business within the forum state. All were found unconstitutional by federal district courts.

*Pennsylvania*

The Pennsylvania statute (Pa.Stat.Ann. tit.43, §§ 1471–72) provided that "principals" (defined as "any person who does not have a permanent or fixed place of business in" Pennsylvania) must enter into written contracts with any employees paid on commission. Principals failing to satisfy the requirements must pay exemplary damages up to twice the amount of the commission due, in addition to costs and attorneys' fees.

The Western District of Pennsylvania found the Pennsylvania statute to be unconstitutional under the Commerce Clause. *Palmer–Lucas v. Martin's Herend Imports, Inc.*, 827 F.Supp. 345, 348 (W.D.Pa. 1993). Finding that the statute discriminated on its face, the court applied strict scrutiny, and found the statute was in violation of the Commerce Clause. While the statute was found to have a legitimate purpose ("protecting in-state sales representatives from prevalent abusive behavior of manufacturers") (quoting *Havlir, infra*), the Court found that the plaintiff offered no reasons why the same purpose could not be furthered by nondiscriminatory means, "such as imposing these requirements upon all manufacturers, both instate and out of state."

After *Palmer–Lucas*, the Pennsylvania legislature made minor modifications to the statute. Three years later, the Eastern District of Pennsylvania struck down the amended statute. The Court decided that the act "applies largely, if not exclusively, to out of state businesses." *Harris v. Hartz & Co.*, 1996 WL 325547, *3 (E.D.Pa.1996). Closely following the reasoning displayed by the *Palmer–Lucas* court, the court in *Harris* held that the Act violated the Commerce Clause. *See id.* at *3–*4. The court did not reach

Equal Protection Clause-based arguments made by the parties. *Id.*

### Kentucky

The Kentucky statute (Ky.Rev.Stat.Ann. §§ 371.370, 371.375) read very similarly to the Pennsylvania statute described above. The statute provided rights for "commissioned sales representatives who enter into agreements with principals" (with "principal" defined as a person who does not have a permanent of fixed place of business in Kentucky). *See Cecil v. Duck Head Apparel Co.*, 895 F.Supp. 155, 157 (W.D.Ky. 1995). A principal failing to comply with the provisions of the Kentucky statute would be liable for "all amounts due the sales representative, plus exemplary damages in an amount not to exceed two times the commissions due the sales representative," in addition to attorneys' fees and court costs. *See id.*

The *Cecil* court held that the Kentucky statute placed an unconstitutional burden on interstate commerce, utilizing the strict scrutiny test under the Commerce Clause. *See id.* at 158. The court analyzed the statute under the Equal Protection Clause as well. According to the court, "to subject an out-of-state principal and not an in-state principal, to a penal statute is a clear denial of equal protection. The in-state principal should have equal responsibility and equal liability." *See id.* at 158–59. On that basis, the *Cecil* court found the statute to be in violation of the Equal Protection Clause as well.

### Ohio

The Southern District of Ohio struck down an Ohio statute, Ohio Rev.Code Ann. § 1335.11, which required "principals" to enter into written contracts with commissioned sales representatives. *Johnson, MacDonald & Assoc. v. Webster Plastics*, 856 F.Supp. 1249, 1250 (S.D.Ohio 1994). The statute provided that if the principal failed to pay the representative within thirteen days of when payment was due, the principal would be liable for exemplary damages "not to exceed three times the

amount of commissions," in addition to attorneys' fees and costs. *See id.* at 1250–51. In the Ohio statute, a principal is defined as "any person who does not have a permanent or fixed place of business in this state." *Id.* at 1250.

The court found that the statute discriminated on its face against a "class of non-Ohio manufacturers." *Id.* at 1253. Applying strict scrutiny, the court found the statute violative of the Commerce Clause because "[t]he risks of liability imposed on the covered manufacturer are much greater and that is what discriminates against interstate commerce." *Id.* While the statute did serve a legitimate purpose under Commerce Clause analysis ("assuring that sales representatives who sell in Ohio are promptly paid the commissions due them"), the plaintiff did not demonstrate that the same purpose could not be better or equally served though non-discriminatory means, such as making all principals subject to the statute. *Id.* at 1252–53. *Johnson, MacDonald* did not address the constitutionality of the statute on equal protection grounds.

### Texas

Tex.Bus. & Com.Code Ann. sections 35.81 to 35.84 provided that "principals" (defined as those who do "not have a permanent or fixed place of business in this state") were required to make commission payments to sales representatives within a prescribed amount of time, and were subject to damages for three times the amount suffered, as well as attorneys' fees. *John Havlir & Assoc. v. Tacoa, Inc.*, 810 F.Supp. 752, 754 (N.D.Tex.1993). The district court found that the statute "clearly discriminates on its face and in practical effect against interstate commerce." *Id.* at 758. The court held that the Texas statute discriminated "among manufacturers according to the location of their principal place of business ... None of these provisions applies to manufacturers with a permanent or fixed place of business in Texas." *Id.* at 757. Since the statute therefore did not apply "evenhandedly,"

the court found that it was facially discriminatory. *Id.* The court therefore applied the strict scrutiny standard, and found the statute in violation of the Commerce Clause. *See id.* at 756–759. Rejecting the plaintiff's arguments that the statute's effects were constitutionally justified because it was more "expensive and time consuming" to sue and collect from out-of-state employers, the court held that even if there was a legitimate purpose behind the legislation, there was no proof offered to show that the same ends could not be met through non-discriminatory means. *See id.* at 758–59. The court concluded that "any difficulty a Texas sales representative may encounter in bringing and collecting a claim against an out-of-state manufacturer is not sufficient justification for subjecting foreign and domestic manufacturers to disparate regulations." *Id.* at 759.

### Florida

The Florida statute, Fla.Stat.Ann. § 686.201, required "principals" (defined as "a person who does not have a permanent or fixed place of business in this state") to pay sales representatives double the amount of commission due if they had failed to pay the commissions due within thirty days of termination. *See Rosenfeld v. Lu,* 766 F.Supp. 1131, 1133 (S.D.Fla. 1991). The court first found that the statute discriminated against interstate commerce on its face in that the statute imposed "requirements on out-of-state principals that are not applicable to in-state businesses ... The statute has absolutely no effect on transactions where the principal has a place of business within the state." *Id.* at 1135–36. The court rejected the plaintiff's argument that the statute was constitutional since any discriminatory effect was minimal, and instead stated that the "scope of the discriminatory effect is not the dispositive issue." *Id.* at 1137.

The court further determined that the practical or probable effect of the statute was discriminatory. *Id.* at 1139. Rejecting plaintiff's arguments that sales representatives incur substantial difficulty in trying to collect and litigate against out-of-state employers, the Court found that the plaintiff failed to show that any local purpose served by the statute could not be satisfied through non-discriminatory means. *Id.* As the court stated, "[i]f the purpose of the statute is to encourage written contracts and to ensure prompt payments of commissions, the state's goals can be achieved in a non-discriminatory manner by applying the statute to all manufacturers and importers." *Id.* at 1141. The Court accordingly held that, under strict scrutiny, the Florida statute ran afoul of the Commerce Clause. *Id.* at 1142.

### Alabama

The Alabama statute required that principals, *i.e.* "those who did not have a permanent or fixed place of business" within Alabama, were liable for three times the damages owed, in addition to attorney's fees and costs. *See* Ala.Code. § 8–24–1 and History, § 8–24–3 (1998); *Moore v. Samuel Miller & Co.,* 1987 WL 342392, *2 (N.D.Ala.1987). Under a Commerce Clause analysis, the *Moore* court held that the statute was "clearly excessive in relation to the putative local benefits," and overstepped the permissible boundaries of the Commerce Clause. *See Moore,* 1987 WL 342392 at *2.[2]

The court also considered an Equal Protection Clause attack on the statute. The court stated that "to hold the out-of-state employer and not the in-state employee subject to a penal statute for failure to comply with the requirement that their contract be in writing is a clear denial of equal protection." *Id.* According to *Moore,* there would be no reason justifying the employer having to bear all the bur-

---

**2.** The Alabama court applied a hybrid balancing test. It seems that they are applying a balancing test since they seemingly describe

the statute as one that regulates "even-handedly" and imposes only "incidental burdens" on interstate commerce. *See id.* at *2.

dens of a statutory violation. Therefore, holding that the "representative should have equal responsibility and equal liability," the court concluded that the statute violated the Equal Protection Clause as well. *See id.*

### C. Commerce Clause Analysis

Paymentech claims that sections 2751 and 2752 burden interstate commerce in violation of the Commerce Clause of the U.S. Constitution. U.S. Const., art. I, § 8, cl. 3. The Court finds that Labor Code section 2751 clearly runs afoul of the Commerce Clause's proscriptions, and that section 2752 suffers the same constitutional deficiency by implication.[3]

■ The Court's initial inquiry focuses on whether the statute, on its face, affirmatively discriminates against interstate commerce, or affects interstate commerce only incidentally and regulates it evenhandedly. Where the language does discriminate on its face, the court engages in a strict scrutiny analysis, allowing the statute to pass muster only if a legitimate local purpose is served and that purpose could not be served as well by available nondiscriminatory means. *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986); *Wyoming v. Oklahoma,* 502 U.S. 437, 454, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) ("When a state statute clearly discriminates against interstate commerce, it will be struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.") (citations omitted). Strict scrutiny is also warranted where the practical effects of a statute are discriminatory, despite facially benign language. *Lewis v. BT Inv. Managers Inc.,* 447 U.S. 27, 37, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980). Employing this standard of scrutiny has been equated with a virtually *per se* rule of invalidity. *Id.*

■ Where the challenged statute affects interstate and intrastate commerce interests equally and burdens interstate commerce only indirectly, the court is to employ a balancing analysis, evaluating the legitimacy of the state's interest, and whether the burden on interstate commerce is excessive in relation to the putative local benefits. *Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). "The extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.*

■ The explicit language limiting liability to those companies lacking a permanent place of business "in this state" renders section 2751 discriminatory on its face. The specific language at issue impacts employers lacking a "fixed and permanent place of business" in the state. As such, it is identical in effect to other states' use of the term "principal" in the analogous unconstitutional statutes discussed *supra.* There is no need to resort to the question of practical effects, *see Brown–Forman Distillers Corp. v. New York State,* 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), where, as here, the distinction is explicit on its face. The statute does not apply to employers with a permanent place of business within the State of California, but subjects those not so situated to treble damages in a civil action. Thus, the Court must analyze the statute under the strict scrutiny standard set out in *Maine.*

The Court's first inquiry is thus into the local purpose underlying the statute. Legislative history arguments offered by both parties suggest that the statute, enacted in 1963, sought to combat so-called "suede shoe operators" who entice gullible state

---

**3.** The Court declines Paymentech's invitation to pass on the intrinsic merits and constitutionality of imposing treble damages on parties in a breach of contract action. The Court's holding is limited to finding section 2752 unconstitutional as applied to companies with a fixed and permanent place of business outside the State of California.

residents to become sales representatives with attractive oral promises of commissions, then fail to deliver on those promises once the work was done. Lett argues that the statutory scheme sets forth several incentives to remedy this problem: (1) the written contract requirement prevents false promises from the outset; (2) the treble damages provision is a strong disincentive to commission employers to enter oral contracts, which would be subject to abuse; and (3) the limitation to those lacking a fixed and permanent place of business in California focuses the effect of the statute of companies which, through distance or transience, could make legal redress inconvenient or problematic.

▮ Lett further argues that, even if the statute burdens interstate commerce, this burden is only incidental, since the statute also burdens intrastate commerce in that it subjects intrastate companies without a fixed and permanent place of business to the same written contract requirement and treble damages exposure. This argument has been rejected soundly by several courts. First, for purposes of the Commerce Clause, unreasonable burdens on interstate commerce cannot be saved by legislative enactments that also impose parallel burdens on intrastate commerce. *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951). In other words, the state's ability to regulate interstate commerce, circumscribed in the Constitution, is not enhanced or affected by its regulation of intrastate commerce. Second, Lett's premise is flawed, since the burden is not incidental; in fact, the statute explicitly distinguishes between categories of company based on their degree of involvement with the state. In this respect, the statute is analogous to that struck down in *Lewis*. In *Lewis*, the Florida statute at issue prohibited out-of-state bank holding companies, banks, and trust companies from engaging in certain business activities in Florida. In defense of the statute, the state argued that it discriminated against "a particular type of organizational structure more than it does against the origin or citizenship of a particular business enterprise." *Id.* at 40, 100 S.Ct. 2009. The Court rejected this distinction, because the statute discriminated against out-of-state businesses by burdening only those companies with principal operations outside of the state. *Id.* at 42, 100 S.Ct. 2009. Thus, the statute discriminated among "affected businesses according to the extent of their contacts with the local economy," and thus ran afoul of the Commerce Clause. Section 2751 suffers from the same constitutional malady. Two companies, each hiring employees on commission, identical in every operational respect except that one is located within the state's borders and the other is not, are treated radically differently under the statute. Neither the statute itself, or Lett in her attempt to save it, suggests a single legitimate purpose for this disparity in treatment. Either company would provide a ready, identifiable target within the meaning of California's long-arm statute for recovery. Yet one is subjected to the burden of contracting only in writing, and treble damages for any failure to do so, whereas the other is not so burdened. This discrepancy cannot withstand strict scrutiny.

Lett's backup arguments also fail. Lett attempts to distinguish other states' statutes based on the fact that they were contained in different code sections of their respective states' statutory law (*e.g.* the Commercial Code), but it is wholly unclear why the nomenclature should matter to the Court, or even trump the discriminatory effect upon interstate commerce. *See Hughes v. Oklahoma*, 441 U.S. 322, 335, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). Lett also argues that the distinction between "domestic" and "foreign" corporations within the meaning of the California statutory law justifies the distinction made in section 2751. The problem with this argument is that the relevant statute here makes no mention of the "domestic"/"foreign" distinction, nor do the definitions of

those terms align with the distinctions made by section 2751. Ultimately, even if that distinction resonated in the statute, it is unclear how this would excuse or mitigate the burdens on interstate commerce. Finally, Lett submits records regarding the numbers of registered corporations in California actually lacking a fixed or permanent place of business in the state, in an attempt to minimize the statute's impact on interstate commerce. This type of number-based argument has been explicitly rejected by the Supreme Court on at least two occasions. *Limbach*, 486 U.S. at 276–77, 108 S.Ct. 1803 (size and number of businesses affected by a discriminatory statute are irrelevant to a Commerce Clause analysis); *Wyoming*, 502 U.S. at 455, 112 S.Ct. 789 (volume of commerce "of no relevance to the determination whether a State has discriminated against interstate commerce.") Therefore, under the strict scrutiny mandated by the Commerce Clause, section 2751 fails to pass constitutional muster.

The Court is compelled to add that, even were it able to ignore the statute's language and accept Lett's premise that the effects were evenhanded and only an incidental burden on interstate commerce, sections 2751 and 2752 would still fail even the more permissive balancing test set forth in *Pike*. While wage regulation and employee protection are certainly legitimate bases for state action, the means employed by California to effectuate those goals are misplaced, and fatal under *Pike*. Simply put, no policy can justify the simultaneous inclusion of the third category of employer typified by Paymentech (*i.e.* companies having a fixed place of business outside of California) and exclusion of the fourth category of employers having permanent and fixed places of business in the state. Were the legislature concerned with all commission contracts, there is no principled basis for exempting those busi-nesses happening to have a permanent place of business in California from the requirement to contract in writing. Were the legislature concerned with the costs and practicalities faced by individuals in litigating against companies who could evade remedy by transience alone, there would have been no need to include companies with a fixed and permanent, yet out-of-state place of business within the statute's ambit. The Court cannot construe a rational purpose for the statute that would not render its distinctions in application as either unconstitutionally protective of local interests, or unconstitutionally hostile to interstate commerce concerns.

Several states have corrected the constitutional deficiency in their analogous statutes by either requiring a fixed and permanent place of business without limitation, thereby making only transient employers subject to the statute, or alternatively by removing the permanent and fixed place of business requirement from the statute altogether, rendering the provision generally applicable to all those doing business in the state. Several states have taken the latter remedial approach.[4] This is one escape route from the constitutional trouble described above. It is also a way of effectuating the policy interests with a lesser impact on interstate commerce, which would defeat Lett's showing under *Pike*. 397 U.S. at 142, 90 S.Ct. 844. California's failure to take the non-discriminatory road to achieving the public policy objectives is fatal to the statute's viability under *Pike*.

### D. Equal Protection Clause Analysis

■ Paymentech also claims that sections 2751 and 2752 violate the Fourteenth Amendment's Equal Protection Clause. While fewer courts have considered analogous statutes under the equal protection rubric, two other state statutes with defini-

---

**4.** *See, e.g.,* Ga.Code Ann. §§ 10–1–700(2)(A) ("principal" redefined as "a person who does business in the state"); La.Rev.Stat.Ann. §§ 441(2) (offending language deleted in 1995); Md.Code.Ann., Lab. & Empl. §§ 3–601(c)(1) (offending language deleted in 1993); Tenn.Code Ann. § 47–50–114(2) (offending language deleted in 1996).

tions of "principal" mirroring the language in the California statute have fallen prey to constitutional scrutiny under the Clause. *Cecil, supra; Moore, supra.*

The Equal Protection Clause prevents disparate treatment of persons on the basis of, *inter alia,* state citizenship. While the Commerce Clause analysis focuses on the burdens imposed on interstate commerce, the Equal Protection Clause protects persons from unconstitutional discrimination by the states. *See Bethlehem Motors Corp. v. Flynt,* 256 U.S. 421, 423–424, 41 S.Ct. 571, 65 L.Ed. 1029 (1921). The Court sees two possible dimensions for this analysis. First, the statute treats companies differently. Companies who are citizens of California are exempt from the statute, whereas those who choose to locate their fixed and permanent place of business outside of California are not. This is the component focused on by *Cecil* and *Moore.* The focal point of Equal Protection Clause scrutiny is distinct, centering not on the burden on interstate commerce but on the disparities between the burdens based on classification. Here, the distinction between the category of businesses with a fixed, but out-of-state place of business, including Paymentech which is severely burdened, and the category of California-based businesses completely unburdened by the statute, runs afoul of the Equal Protection Clause.

Second, the statute treats companies who are out-of-state citizens differently than individuals who are state citizens. It is well-established that a corporation is a person within the meaning of the Fourteenth Amendment. *See Western &*

*Southern Life Ins. v. State Board of Equalization of Calif.,* 451 U.S. 648, 660 n. 12, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). While the statute is designed to remedy inequities between employers and isolated employees, the statute in effect can also be seen as tipping the playing field in contract actions in favor of the state resident. While this is admittedly a closer question than the first dimension of the Court's Equal Protection analysis, the Court finds the statute does not pass Equal Protection Clause muster on this basis either.

For the foregoing reasons, the Court GRANTS Paymentech's motion to dismiss Lett's second cause of action. Lett's claims under California Labor Code sections 2751 and 2752 are DISMISSED WITH PREJUDICE.[5]

## II. *Tameny* Claim

Paymentech seeks judgment on the pleadings as to Lett's third cause of action for violation of public policy on two bases: first, Lett was not fired and *Tameny* claims are, according to Paymentech, limited to wrongful termination; and second, they are barred as tort claims because they arise out of the underlying contract (*i.e.* "ex contractu"), and not from an extrinsic public policy overlying all employer-employee relations (*i.e.* "ex delicto"). Lett cites case law modifying the categorical premise that *Tameny* claims must arise out of terminations, not conditions of payment. *Scott v. Pacific Gas and Electric Co.,* 11 Cal.4th 454, 46 Cal.Rptr.2d 427, 904 P.2d 834 (1995) ("wrongful demotion" implicitly cognizable under *Tameny* ). Lett

---

5. In reaching its conclusion, the Court has considered whether abstention would be appropriate. The Court may abstain from ruling where a constitutional issue is raised regarding a state statute, and the state courts have yet to settle the questions raised. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941). However, *Pullman* abstention is inappropriate where the state statute cannot be interpreted so as to avoid the constitutional issue presented. For the reasons amply set

out *supra,* the Court finds that the statute on its face forces the Court to confront its constitutionality.

> In a similar vein, certification of the constitutional question to the state Supreme Court is not an option, since under the California Rules of Court as amended in 1998, only the U.S. Supreme Court and federal appellate courts have the power to certify questions for the state court. Cal. Rules of Court 29.5(b).

also cites to case law identifying the prompt payment of wages as a fundamental public policy. *Gould v. Maryland Sound Industries Inc.,* 31 Cal.App.4th 1137, 37 Cal.Rptr.2d 718 (1995). *Gould,* unlike this case, is a termination case, where the allegation in the complaint (taken as true for purposes of the demurrer before that court) was that the company had fired the individual to avoid paying back wages and vacation pay. *Id.* at 1148, 37 Cal.Rptr.2d 718. In contrast, Lett left Paymentech, and does not assert a claim under a theory of constructive discharge.

Lett concedes that she presents a novel claim under *Tameny.* The problem with her claim, based solely upon the notion that the right to prompt payment of wages is a fundamental public policy (a premise with which the Court has no basis to quarrel), is that the underlying argument proves too much. Simply put, Lett offers no distinction that would allow a court to separate garden-variety pay disputes from those resonating with public policy concerns. It does not take a leap of imagination to envision that, absent such a distinction, every employment dispute where back pay is owed would result in a *Tameny* claim as well. Lett has not pointed the Court to a basis in case law to warrant such a distinction here. Absent that, the Court will not expand *Tameny*'s reach to issues that, even indulging inferences for the purposes of Rule 12, appear to be plainly contractual in nature. *Gould* is distinguishable in that the adverse job action was taken by the defendant, and the record is bereft of support for the expansion of *Gould*'s logic to cases where the employee terminates the relationship. On the other side of the ledger, the California Supreme Court has strictly confined the scope of *Tameny* claims. *Hunter v. Up–Right, Inc.,* 6 Cal.4th 1174, 1186, 26 Cal. Rptr.2d 8, 864 P.2d 88 (1993); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 669–670, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). With this legal backdrop, the Court is strongly disinclined to indulge new theories of recovery under *Tameny.* Accord-

ingly, Paymentech's motion for partial judgment is GRANTED.

### III. Breach of Covenant of Good Faith and Fair Dealing Claim

Paymentech seeks dismissal of Lett's fifth cause of action, on the basis that it seeks duplicative relief. Lett counters that it is too early to make such a determination, and at this early stage, overlapping and even mutually exclusive causes of action can be indulged so long as they are actionable. The Court agrees with Lett that within the ambit of Rule 12 it is premature to foreclose avenues of relief, even where the relief sought might ultimately prove duplicative. For the Court to intervene and foreclose potential avenues of relief is not within the purview of Rule 12, which focuses the Court's efforts on the plaintiff's ability to state a legally viable claim, not its ultimate viability relative to a plaintiff's other claims. To find otherwise would have the Court go beyond the pleadings and choose which of Lett's theories is most viable. This is not a proper basis to grant such a motion. *See Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542 (9th Cir.1989). The underlying well-pled factual allegations, not the totality of claims and their interplay, control a court's inquiry under Rule 12. Accordingly, Paymentech's motion to dismiss Lett's fifth cause of action is DENIED.

### CONCLUSION

The Court finds that California Labor Code sections 2751 and 2752 are unconstitutional as applied to businesses lacking a fixed and permanent place of business in California. Paymentech's motion for partial judgment as to those provisions is GRANTED, and Lett's second cause of action is DISMISSED WITH PREJUDICE. Paymentech's motion for partial judgment on the pleadings as to Lett's *Tameny* claim is also GRANTED. However, Paymentech's motion for partial

judgment as to breach of implied covenant claim is premature, and is accordingly DE-NIED.

IT IS SO ORDERED.